## CREWS et al. v. GARBER.

No. 26315. Nov. 2, 1937.

Rehearing Denied Nov. 23, 1937.

Application for Leave to File Second Petition for Rehearing Denied Dec. 7, 1937.

Christy Russell, A. F. Moss, H. R. Young, and M. F. Priebe, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

BAYLESS, V. C. J. This is an appeal from the district court of Garfield county. The original petition was filed by Ralph Crews, trustee (as trustee for Ralph Crews, Charley Crews, Robert Crews, Everett Crews, Mary Willes, nee Crews, and Amy Tresner, nee Crews), as plaintiff, against Lucy Garber. The plaintiffs were allowed by the court to change the style of their action by making Ralph Crews and all of the parties for whom he was named as trustee as plaintiffs to an amended petition.

The parties will be referred to as they appeared in the trial court.

This is an action against the defendant for conversion of certain government bonds, or more properly called treasury certificates, which were purchased by the defendant from the American National Bank of Enid, Okla., on December 29, 1922.

The plaintiffs allege in their petition and amended petition, in substance, that they were the sole beneficiaries of a certain estate known and styled as "Crews Estate Oil & Gas Producers," and also of a certain escrow account in the Farmers State Bank of Garber, designated as "Crews Estate Oil & Gas Producers Escrow," the same having been created pursuant to a certain written contract dated June 13, 1922, and entered into between the Crews Estate Oil & Gas Producers and the Garber Refining Company, and which provided for the sale of oil to the Garber Refining Company produced from certain land then in litigation; that one-eighth of the proceeds was to be paid to the plaintiffs as soon as the oil was received and seven-eighths to be deposited in escrow in the Farmers State Bank of Garber, Okla.; that the bank was to pay out of this fund such sums as was necessary for use in further developing the land until the litigation over the land was settled. The contract provided that the bank was to invest the unused portion of the seven-eighths in the best bonds and obligations of the United States obtainable, to be held in escrow in lieu of the money, the maturing interest thereon to be paid to plaintiffs. The provisions of the contract was approved by the Farmers State Bank; that bonds were purchased by said bank or by it through some other bank, and included the American National Bank as a purchasing bank; that when bonds were purchased by such bank it would be charged to the account of the Farmers State Bank of Garber; that the bonds would be either sent to the Farmers State Bank, and by it returned to the American National Bank, or kept for safekeeping when purchased by the American National Bank; that the Farmers State Bank would direct the American National

Bank to sell some of the bonds, which it would do and credit the account of the Farmers State Bank with the proceeds of the sale.

It is further alleged in the petition that on or about December 29, 1922, the defendant, Lucy Garber, together with and acting with and through the American National Bank of Enid, T. E. Vessels, and Floyd E. Felt, officers of said bank, and each of them, did wrongfully convert and appropriate to the use and benefit of the defendant, of the certificates so purchased for plaintiffs, four certificates of the amount of $1,000 each, and two of the amount of $10,000 each, in the total of $24,000; that the American National Bank, T. E. Vessels, and Floyd E. Felt did wrongfully deliver the certificates and coupons attached to the defendant. It is then alleged that the American National Bank of Enid, T. E. Vessels, and Floyd E. Felt, and each of them, were agents of the defendant and duly authorized by her to deliver said certificates to her; that the defendant did convert the certificates, and each of them, together with the coupons attached, to her own use and benefit, and did thereupon deprive the plaintiffs thereof. It is then alleged that it was the duty of the Farmers State Bank and the American National Bank and the officers of each, including Vessels, Felt, and Taft, as well as the defendant, to divulge and make known to the plaintiffs that such fraudulent conversion had been effected and that they, and each of them, failed to perform such duty; that when the litigation over the land was settled, plaintiffs advised the bank, and demand was made upon the bank, and it was found that the certificates and deposits to the amount of about $500,500 were wholly lost.

The defendant answered, denying the allegations of the amended petition, and specially denied under oath the allegations of agency, pleaded the statute of limitations and specifically denied that the United States certificates of indebtedness or bonds were the property of plaintiffs.

The cause was tried to a jury, and upon the conclusion of the testimony, the defendant's demurrer to the evidence was sustained. The plaintiffs present many assignments of error, submitted in their brief, under four propositions.

The first and second contentions are that there was competent evidence of the existence of agency of the American National Bank, Vessels, and Felt to act for the defendant. Whatever was done by the defendant, Lucy Garber, was done through the agency of the American Bank, Vessels, and Felt, and she is chargeable with their frauds precisely as if she committed them personally.

It is very evident that the plaintiffs must prove these contentions in order to prevail.

The record is very clear relative to the transactions between the two banks in buying and selling the bonds complained of. The Farmers State Bank of Garber had authority to invest the funds of the plaintiffs in such bonds. The American National Bank of Enid bought several bonds for the Farmers State Bank of Garber at its request. The bonds which were sold by the American National Bank to the defendant, Lucy Garber, were purchased by that bank for the Farmers State Bank of Garber at its direction in the ordinary course of business, and were placed in the American National Bank by the Farmers State Bank subject to its order. Prior to the time that the bonds were sold to the defendant, the Farmers State Bank had requested the American National Bank to sell the bonds held for said bank. The American National Bank sold $37,000 of the bonds, $24,000 to the defendant, $3,000 to M. C. Garber, and $10,000 to another purchaser. Proper credits were given to the account of the Farmers State Bank of Garber for the entire amount, and when the Farmers State Bank received the report of such sales, the total sum of $37,000 was credited to the escrow account carried on its books. It is also shown that the amount of the purchase price of the bonds was charged to the escrow account of the Crews Estate Oil & Gas Producers.

The bonds were what are designated as bearer bonds, due and negotiable on delivery. There is no evidence which even tends to show that at the time the defendant bought the bonds she had any information or knowledge that the bonds belonged to any one other than the American National Bank, from whom she had made similar purchases. The defendant was duly notified by the bank that they had charged her account in the sum of $24,000 as the full amount of the bonds purchased for her. Had the American National Bank sold the

bonds without any authority to so do, the defendant would have had to have full knowledge of the wrongful act before she could have ratified same.

On page 131 of plaintiffs' brief it is stated:

"That upon the deposit of such certificates by the Farmers State Bank in safekeeping with the American Bank, that the American Bank, Vessels and Felt knew such certificates were not the property of the Farmers Bank and knew that they belonged to a 'customer' of the Farmers Bank. Consequently, we say that upon the deposit of such certificates in safekeeping in the American Bank the trust relation followed the certificates."

And:

"Furthermore, when the American Bank, Vessels and Felt, as agents for her, purchased these certificates for defendant, their knowledge was imputed to her and the trust relation followed the certificates into her hands."

These are, indeed, very conclusive assertions, but, unfortunately for the plaintiffs. there is no evidence in the record to substantiate either of them. There is nothing in the record showing such acts or relation between the defendant and the American National Bank and its officials as would even tend to show a relation of agency further than that defendant requested of the bank that her funds on cash deposit be invested in bonds, and that such funds were so invested for her. Until it has been shown that the sale of the bonds to the defendant was without authority on the part of the Farmers State Bank, and fraudulent, and that the officials of the American National Bank, as agents of the defendant, or the defendant, knew it at the time, or that such knowledge was obtained by them in time to protect the sale price of same placed in the Farmers State Bank of Garber, there certainly could be no liability upon the defendant for the acts. The defendant paid full value for the bonds purchased.

One of the latest expressions of this court on the subject of agency is found in Fairmont Creamery Co. v. Carsten, 175 Okla. 592, 55 P. (2d) 757, wherein this court held:

"Where it is sought to hold one person responsible for the torts committed by another, it must be made to appear by competent evidence that the relationship of principal and agent, or that of master and servant, existed between the two at the time the tort was committed, and in addition to that tortious act complained of was committed in the course of the employment of the servant."

"The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist at the time and in respect to the very transaction out of which the injury arose."

"The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. He is to be deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of the work, but in all its details."

We agree that a person may assume to act as the agent of another in committing or doing an unauthorized act or transaction, and when such is ratified by such person, it would be valid and binding upon him, but before it could be binding upon the principal it is essential that he have full knowledge of all material facts and circumstances relative to the unauthorized act or transaction. Thorp Oil & Specialty Co. v. Home Oil Refining Co., 79 Okla. 225, 192 P. 573.

The record fails to disclose any evidence tending to show that the American National Bank or its officials had any information that the particular certificates or bonds sold to the defendant belonged to anyone other than the Farmers State Bank, under whose authority and for whom they were purchased, or that they had no right to sell same regardless of who owned them. Nothing in the record tends to show that the defendant had any knowledge that the bonds that were purchased for her by American National Bank had been purchased for the Farmers State Bank with funds belonging to the plaintiffs. Since the bonds were purchased by the American National Bank for and under the direction of the Farmers State Bank, it cannot be questioned that they could be sold under the same authority. The defendant would not be chargeable with any knowledge possessed by one who is alleged to be her agent unless there is some evidence that such agency existed.

We have given due consideration to the various contentions of the plaintiffs and the authorities cited, but do not think they are controlling in the instant case. We think the demurrer to the plaintiffs' evi-

dence was properly sustained by the trial court, as is disclosed by our discussion of the proposition just indulged.

The judgment is affirmed.

RILEY, WELCH, CORN, HURST, and DAVISON, JJ., concur. OSBORN, C. J., and PHELPS and GIBSON, JJ., absent.