## LEONARD v. TULSA BLDG. & LOAN ASS'N et al.

No. 27282. Dec. 13, 1938.

Rehearing Denied April 4, 1939.

Silverman & Rosenstein and Conner & Winters, for plaintiff in error.

Hagan & Gavin and Milsten & Milsten, for defendants in error.

RILEY, J. This action was filed October 20, 1934, in the district court of Tulsa county for James Randolph Leonard, a minor, by his next friend, Bertha Lee, his mother,

against the Tulsa Building & Loan Association, a corporation, and W. J. Barnett, receiver.

It was alleged in the petition that plaintiff was a minor twelve years of age; that, in 1924, the plaintiff, by and through his mother, opened a deposit account with the Tulsa Building & Loan Association under the terms of the following agreement which was contained in the "pass-book" issued to plaintiff at the time of the first deposit:

"Notice.

"The person whose name appears herein has deposited on optional installment savings the amounts entered in this pass book, on which the association agrees to pay interest at the rate of six (6) per cent. per annum from date of deposits to the next nearest interest paying date. Interest payable January first and July first of each year. Interest not withdrawn, compounds at 6% per annum.

"The amounts deposited, or any part thereof, may be withdrawn at any time. The association reserves the right to require thirty days' notice on withdrawals. No entrance or withdrawal fee is charged on this account."

It was further alleged that plaintiff's deposits and interest accumulated thereon amounted to $13,197.18, on September 30, 1931; that no credits had been made thereafter; that plaintiff relied upon the agreement to permit withdrawal of the deposits upon proper notice; that from time to time plaintiff made deposits and withdrawals in accordance with said agreement; that interest was credited on the amounts deposited; that on two occasions proper notice was given, but the defendant refused to permit the withdrawal of any part of said deposit.

Plaintiff prayed judgment in the sum of $15,562.03, with interest at the rate of 6 per cent. compounded semiannually from the 1st of July, 1934.

Exhibit "A," attached to the petition and made a part thereof, was composed of a copy of the above agreement contained in the passbook, and a copy of the entries in the passbook showing the amounts and dates of the various deposits, withdrawals, and interest credits.

Defendant answered by general denial, and further pleaded that plaintiff, by and through his mother as agent, subscribed for stock in the building and loan association. and attached the following as Exhibit "A," to which we will hereinafter refer as "Application":

"No. 1866.
"Tulsa Building & Loan Association.
"Tulsa, Oklahoma, 1/7, 1924.

"James Randolph Leonard, minor, County of Tulsa, State of Oklahoma, hereby subscribe for O P 3, optional payment shares in the above named Association, subject to its by-laws, rules and regulations, to which I hereby assent. I also constitute and appoint Cleves F. Bruce, or his successors, my Attorney and Proxy, authorizing him to vote for me and in my name at any general or special meeting of the shareholders of the Association at which I am not personally present.

"Signed    James Randolph Leonard by
"B. Leonard.
"Address: _____ Phone _____."

Defendant further pleaded plaintiff was estopped to deny he was a stockholder of the association because he had accepted the benefits of membership for a period of ten years; that on March 23, 1934, W. J. Barnett took charge as receiver of the defendant association; that the notice of withdrawal filed by plaintiff prior thereto was of no further force or effect; and that since the notice of withdrawal was filed there had been no funds in the hands of the defendant whereby such withdrawal could be paid.

Defendants filed an amended answer wherein the allegations of the original answer was adopted, and in addition thereto it was alleged that the plaintiff became a stockholder by virtue of the provisions of section 9814, O. S. 1931; and that by the terms of the application plaintiff subjected himself to the by-laws of the association which prescribed the terms, benefits, and obligations of the stockholders.

Plaintiff's reply contained a general denial, and he specifically denied that on January 7, 1924, or at any other time there was delivered to him a stock certificate of defendant corporation.

In further reply plaintiff alleged he was a minor of 13 years of age; that at the time of the original transaction he was a minor two years of age and under the laws of the state of Oklahoma he could not at the time of the original transaction become member and stockholder in the defendant corporation, for the reason he was under the age of 14 years; that even if it should be found that plaintiff became a stockholder of the defendant by virtue of the application for the three shares, there was never any stock certificate issued, or any contractual relationship other than that of lender and borrower between this plaintiff and defendant

concerning the remainder of the moneys deposited by plaintiff; and that all of plaintiff's negotiations with the defendant were oral, did not contemplate the relation of stockholder, and that if the plaintiff is a stockholder of the defendant, the plaintiff was over-reached, in that plaintiff relied upon the oral negotiations and representations of the defendant corporation and its officers.

The case was tried on the 15th day of May, 1935, and was continued from time to time until January 3, 1936, at which time final judgment was rendered. The pertinent parts of the journal entry are as follows:

"Whereupon, the court announced that there was only one issue of fact for the consideration of the jury, and by stipulation of counsel the court submitted a special interrogatory to the jury covering that one disputed fact, and further upon stipulation of counsel it was agreed that after submitting the special interrogatory to the jury the court would consider and pass on the undisputed evidence and render judgment in this case.

"Whereupon, under proper instruction, the court submitted a special interrogatory to the jury, which, together with their answer thereto, is:

"Gentlemen of the Jury:

"You will answer the following interrogatory: 'Was the application blank, which has been identified as defendants' exhibit 1, filed out, and the blanks therein completely filled out at the time the same was signed by the mother of the plaintiff? Answer: Yes.' "

The court found the issues for the plaintiff, and in open court stated:

"I am going to enter judgment in the nature of rescission in this case. The evidence of the mother of the child was that she was misinformed when she signed the paper she signed; she didn't understand that she was buying stock at all. The officer of the association was in court at the time of the trial, and didn't deny these facts, so that testimony is uncontradicted.

"My first thought was that that would be varying the terms of a written contract, and therefore would not be competent; but Mr. Rosenstein calls attention to a case recently written by Justice Gibson to the contrary; (sic) that a different rule prevails, and that is that the contract is induced by the fraud or misrepresentation. It doesn't come within the rule of varying the terms of a contract.

"The judgment will be that the plaintiff will recover the amount paid in, less the amount received, that is, $10,015.42, without interest. Let both sides have an exception.

"It is, therefore, ordered, considered and adjudged that the plaintiff have and recover judgment of and from the defendants, and each of them, for the sum of Ten Thousand Fifteen and 42/100 dollars ($10,015.42) without interest except that said sum shall bear interest at six per cent. (6%) per annum from this date, to wit: January 3, 1936, together with the costs of this action, for which let execution issue.

"To which ruling and judgment of the court all parties except."

On January 10, 1936, plaintiff filed a written notice of appeal from the judgment in so far as the judgment denied the plaintiff interest from the date of deposit of those sums which constituted the basis of the judgment.

The plaintiff did not file a motion for a new trial, so styled, but did file within three days a motion to correct judgment by allowing interest, and the defendant contends his failure in this respect is fatal to this appeal.

With this contention we cannot agree.

Within ten days after judgment the plaintiff filed a "Notice of Appeal," and within six months filed in this court a petition in error, wherein he alleged the court erred in refusing to allow interest on the various sums deposited with defendant corporation by plaintiff. To the petition in error plaintiff attached a transcript of the proceedings in the trial court certified by the court clerk as "* * * a full, true and complete transcript of the record * * * and of all the papers and proceedings in said cause. * * *" This is a sufficient certificate for a transcript. Thomas v. Potter, 164 Okla. 212, 23 P.2d 381.

In Mires v. Hogan, 79 Okla. 233, 192 P. 811, it was held:

"A certified transcript of the record in the court below with petition in error constitutes a sufficient record upon which this court may consider errors disclosed by the judgment roll."

In Pure Oil Co. v. Quarles et al., 183 Okla. 418, 82 P.2d 970, it was stated:

"Where an error in a judgment appears on the face of the record proper, this court will consider and correct same although no motion for new trial was filed, and no exception taken thereto in the trial court."

The appeal is properly here at least for consideration of any errors that may appear on the record proper.

The judgment roll or record proper consists of the petition, process, return, pleadings, verdicts, orders, judgment, and all material acts and proceedings of the court. Le-

Clair v. Calls Him, 106 Okla. 247, 233 P. 1087.

It was held in Mires v. Hogan, supra, that:

"A final judgment is a part of the judgment roll, and its correctness can be tested in this court by an examination of the judgment, its premises, recitals. therein, the pleadings, and all parts of the judgment roll. * * *"

It is stated in the judgment that "The court finds the issues for the plaintiff." A general finding for a party finds for him every issuable fact on which the judgment might rest. Wrought Iron Range Co. v. Leach, 32 Okla. 706, 123 P. 419; Davis v. First National Bank of Norman, 51 Okla. 498, 152 P. 122; and in First National Bank of Guymon v. Arnold, 28 Okla. 49, 113 P. 719, it was stated:

"In a cause tried to the court a general finding for plaintiff is equivalent to finding in his favor each fact in issue in the cause."

Neither plaintiff nor defendant objects to the judgment of the court whereby defendant is to pay to plaintiff $10,015.42, the sum actually deposited by plaintiff. As a matter of fact, defendant in its brief states this sum has been paid to the clerk of the trial court.

Plaintiff contends that after the court concluded and held that plaintiff was entitled to judgment for the entire sum deposited with the defendant, he then became entitled, as a matter of law, to interest at 6 per cent. from the dates of the various deposits.

The court stated that he was going to render judgment in the nature of rescission, and immediately following that statement said the evidence of the mother of the child was that she was misinformed when she signed the application; that she did not understand she was buying stock at all; and that her testimony on this point was uncontradicted.

Defendant contends that the judgment rescinds the contract and that to allow plaintiff interest would violate the rule that the rescinding party cannot claim some benefit under the contract, and that interest is recoverable in a case of rescission only from the date of the notice of rescission.

It appears from the record proper that notice of withdrawal was given to defendant prior to the date of the appointment of the receiver. No interest was allowed by the judgment. Obviously, under defendant's contention and authorities, the judgment is in error by not allowing interest from the date of the notice.

But we do not find it necessary to bottom this case on the statute providing for rescission alone. In fact, defendant's effort to isolate this one statement of the trial court that judgment was rendered **in the nature of rescission** and insist that the case must stand or fall on the doctrine of rescission is unwarranted.

It appears from the judgment roll that at the time of the original transaction and at the time suit was filed, the plaintiff was a minor under the age of 14 years.

Section 9824, O. S. 1931, provides:

"It shall be lawful for any minor above the age of fourteen, or a married woman, to take and hold shares in such corporation, and for such corporation to pay to any minor any money that may be due him in respect to any share, and his receipt therefor shall be valid; but no minor shall be eligible to hold any office in said corporation."

This is a special statute lowering the age requirement of the statute which deals generally with the subject of contracts by infants. It was unnecessary for the special interrogatory concerning the signing of the stock application to be submitted to the jury; it was further unnecessary to find fraud in its procurement or to rescind the contract because of fraud. The contract was voidable at the instance of the plaintiff under the last-cited section of the statute, and the plaintiff in his reply so pleaded.

The statute applicable under such circumstances is section 9399, O. S. 1931, 15 Okla. St. Ann. sec. 19, which provides:

"In all cases other than those specified herein, the contract of a minor, if made whilst he is under the age of eighteen may be disaffirmed by the minor, himself, either before his majority or within one year's time afterwards; or in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor whilst he is over the age of eighteen, it may be disaffirmed in like manner upon restoring the consideration to the party from whom it was received or paying its equivalent with interest."

By the special statute the Legislature has sought to protect a minor from the improvident actions of infancy. Section 9399, supra, does not require a restoration of property received under the disaffirmed contract when the minor is under 18 years of age, as is otherwise required.

A contract disaffirmed by an infant is void ab initio. Grissom v. Beidleman, 35 Okla. 343, 129 P. 853. Upon disaffirmance of the contract defendant was in the position of having had the use of and benefit of plaintiff's deposits without right.

The case of Shipp v. McKee, 80 Miss. 741, quotes with approval the following from French v. McAndrew, 61 Miss. 192:

"The effect of the disaffirmance by her (a minor) is to render the conveyance void ab initio by relation, and to entitle her to charge the purchaser for rents during the whole time that he occupied the property, claiming under her deeds."

Interest is very similar to rent.

In conformity with the above are: Weaver v. Jones, 24 Ala. 420; Ison v. Cornett, 116 Ky. 92, 75 S. W. 204; Merida v. Cummings (Tex. Civ. App.) 115 S. W. 613.

While there are a few cases holding that the infant is entitled to rent only from the date of the disaffirmance, we believe the above cases represent the majority and better reasoned view. Only by the above theory can the shield provided by the statute adequately protect the minor against the improvident acts of infancy.

In the case of Robinson v. Weeks, 56 Me. 102, a minor was induced to purchase a share of stock in the Mt. V. L. & P. Company for the sum of $200. On arriving at his majority he repudiated the contract and sued to recover the principal with interest, and in passing on the matter the court said:

"In this case, the contract being legally rescinded, the rights of the parties are the same as if none had even been made. He who makes a contract of this class with a minor assumes the risk of rescission. The money must be repaid with interest from the date of its receipt."

The defendant contends that the above case has been overruled by Whitman v. Allen, 123 Me. 2, and Utterstrom v. Kidder, Inc., 124 Me. 10. On the contrary, both cases cite Robinson v. Weeks, one to distinguish it and the other to approve it.

Although this identical question seems never to have been before this court, interest was allowed under strikingly similar circumstances in the case of Oklahoma Nat. Gas Corp. v. Lay, 175 Okla. 75, 51 P.2d 580. Therein Julia A. Lay purchased 20 shares of stock of the par value of $100 per share from defendant. The suit was brought by her personally and by her son and next friend for rescission on the ground that Julia A. Lay was mentally incompetent at the time she purchased same. The court directed the jury to return a verdict for the money with interest at the rate of 6 per cent. from date of the purchase of the stock. The judgment was affirmed by this court.

In defendant's supplemental brief is found a discussion on the equities of this case in the light of the rescission of contracts. Many of the principles of rescission are applicable to disaffirmance of contracts by infants. The passage follows:

"Defendants in this case received but one thing of value and that was $10,015.42. This it had paid to the clerk of the trial court. It has complied with the statute. To this, and this alone, plaintiff is entitled. That statute is founded upon the elemental and fundamental notion that when one contracting party rescinds a contract, **both** parties are to be restored to their status quo. * * * Rescission was created by equity; it therefore seems queer that in rendering a contract null and void and seeking to return the parties to the status, a court should return only one of the rescinding parties to the status quo. He who seeks equity surely must do equity. He should not seek to penalize the other party. The statute applies to both parties; the intent of the Legislature was to return **both** parties to their positions as of the time the contract was made. Neither party was to be benefited; neither was to suffer."

Now, were the sums deposited by plaintiff the only thing of value received by defendant under the contract? The very purpose of building and loan associations, as reflected by the statutes creating them, is to secure money to reinvest for profit to the association. To refuse plaintiff interest under the circumstances reflected from the judgment in this case would give defendant an unconscionable advantage. It would entitle defendant to the use and benefit of plaintiff's money, obtained by defendant's fraud, and under a contract which defendant knew plaintiff was entitled to disaffirm, for a period of more than seven years, without the payment of one cent for such use and benefit. That would not seem to conform to defendant's statement that neither party was to be benefited, neither was to suffer, even if we considered this case under the rescission statute.

Reverting to consideration of the motion to correct judgment filed within three days, treating this pleading as a motion for new trial, the cause, of course, would be reviewable on case-made, wherein all the evidence presented would be considered.

Two of the Justices concurring herein are of the opinion that the cause should be so treated. Additional concurring Justices are agreeable to this view.

Accordingly, the cause is remanded to the trial court, with directions to determine the amount of interest due from the dates of the various deposits, and to enter judgment in accordance herewith giving due consideration to the fact that a receiver had been appointed for the defendant corporation.

OSBORN, C. J., and CORN, GIBSON, DAVISON, and DANNER, JJ., concur. BAYLESS, V. C. J., and WELCH, J., dissent. HURST, J., not participating.