**OKLAHOMA RY. CO. v. SANDFORD.**

No. 35193.

Supreme Court of Oklahoma.

April 28, 1953.

Rehearing Denied June 30, 1953.

Application for Leave to File Second Petition for Rehearing Denied
July 14, 1953.

F. M. Dudley and Richardson, Shartel & Cochran, Oklahoma City, for plaintiff in error.

Howard K. Berry, Oklahoma City, for defendant in error.

O'NEAL, Justice.

Plaintiff below, W. R. Sandford, recovered a judgment against the Oklahoma Railway Company, a corporation, based upon allegations that A. L. Lambert, a bus driver of the defendant company, committed an assault and battery upon plaintiff during the course of Lambert's employment with and as the agent of the defendant Oklahoma Railway Company.

At the close of plaintiff's evidence, defendant interposed a demurrer upon the ground that plaintiff's proof did not sustain the allegations of his petition, nor constitute a cause of action for the reason that the proof failed to show that the acts and conduct of the bus driver, Lambert, were done and performed by him in the course of his employment as the bus operator and agent of the defendant company.

At the close of all of the evidence, defendant moved for a directed verdict upon the same grounds as recited in its demurrer under plaintiff's evidence. Both the demurrer and motion for a directed verdict were overruled by the trial court, and exceptions saved by the defendant. In our view of the case we hold that the

court erred in its disposition of the demurrer and motion for the directed verdict.

On the evening of December 4, 1948, plaintiff intended to pick up a lady employed at McEntees Jewelry located on Main Street in Oklahoma City. As a rule, the store closed at 6:00 p. m., and the lady would usually leave her place of employment between the hour of 6:00 and 6:30. Plaintiff, while awaiting the lady's arrival in front of the store, had driven his automobile around the square of Main, Robinson, Grand and Harvey Streets a number of times immediately prior to the assault and battery complained of. As plaintiff approached the southwest corner of Main and Robinson Streets, upon his final circuit, defendant's bus moved into a position to obstruct plaintiff's intended turn to the right for entry on Robinson Avenue. At this point Lambert having stopped his bus, which partly obstructed plaintiff's movement, got out of the bus, went to the south or right door of plaintiff's automobile and opened the door and ordered plaintiff out of his car accompanied with a threat, according to one witness, that he would beat hell out of him; that in attempting to pull plaintiff out of the automobile Lambert struck plaintiff several blows, one of which landed under plaintiff's left eye inflicting a wound requiring surgery. A witness for plaintiff testified that he was standing on the corner of Main and Robinson Streets as Lambert brought his bus in a position to prevent plaintiff's forward movement; that Lambert got out of the bus and opened the car door and said: "The s— b— is drunk." and requested that the bystanders call a policeman; that Lambert attempted to drag plaintiff out of the car and in the attempt pulled the right sleeve out of plaintiff's overcoat. The witness stated that Lambert at the time struck plaintiff several blows.

Prior to the trial plaintiff had taken the deposition of Lambert, excerpts of which plaintiff read to the jury. The substance of this testimony was that Lambert was the driver of the bus on December 4, 1948, when the altercation occurred between him and plaintiff; that Lambert hit plaintiff in the face and that he did so intentionally and not accidentally.

After the trial court overruled defendant's demurrer to the foregoing proof, defendant read Lambert's deposition to the jury in its entirety. Lambert testified that he first observed plaintiff at the corner of Main and Walker Streets as plaintiff apparently was turning off of Walker east on Main at which point plaintiff cut between Lambert and the bus stop on said corner; that Lambert stopped to keep from hitting plaintiff's car. After plaintiff pulled away from the bus zone at Walker and Main, he proceeded east on Main Street. When plaintiff's car reached a point about half way between Walker and Hudson Streets he brought his car to a stop immediately in front of the bus without any apparent reason, as the traffic was moving forward at the time. Lambert sounded his horn but plaintiff didn't move forward so Lambert was compelled to back his bus and go around plaintiff's car. When plaintiff's car approached Main and Hudson, plaintiff indicated he was going to turn south on Hudson, and after partly completing the turn he pulled his car back onto Main and into the area of the bus zone on Main and Hudson. Lambert again sounded his horn but plaintiff made no response to it and Lambert had difficulty in getting his bus out of the zone. Plaintiff stopped his car between Hudson and Harvey, some distance back from the intersection, double parking, so the bus was compelled to stop, sound its horn and await plaintiff's pleasure to proceed. As the bus approached Harvey Street, plaintiff's car, after traveling near the center of Main Street, suddenly cut in front of the bus causing Lambert to come to a sudden stop to avoid colliding with plaintiff's car. When the bus and automobile reached a point near Main and Robinson, the bus pulled over toward the curb blocking in part plaintiff's forward movement. Lambert then left his bus, walked over to plaintiff's car, opened the right-hand door and asked plaintiff if he was drunk. Plaintiff responded that he was not drunk. Lambert smelled alcohol upon plaintiff and asked the bystanders to call the police. Lambert admitted striking plaintiff, which

h'e said occurred after plaintiff applied an opprobrious remark to him. The police took plaintiff in charge and conducted him to the police station where he was charged with driving an automobile while under the influence of alcoholic beverages. A policeman testified that plaintiff was under the influence of alcohol. Another witness testified that plaintiff was definitely drunk. Lambert testified that "well, his eyes were stary, glary-like, and the way he talked; he slurred his words at that time." Lambert stated that from plaintiff's manner of driving his car and his appearance that plaintiff was drunk. A passenger on defendant's bus testified that he first saw plaintiff's car as the bus approached Walker and Main Streets; he described plaintiff's driving as zigzagging back and forth in front and at the side of the bus, stopping at intervals in the bus zones. He further testified that at one intersection plaintiff ran through a red signal stop sign. The evidence of this witness and that of another passenger on the bus is in substantial support of Lambert's testimony with reference to the manner in which plaintiff operated his car along Main Street.

To sustain the judgment plaintiff asserts that where the evidence is in conflict as to whether Lambert acted within the apparent scope of his authority, that the question must be resolved by the jury.

To reverse the judgment defendant asserts that plaintiff's evidence in chief and the evidence as a whole, does not establish that Lambert's acts were committed within the scope of his employment, and that there was a total absence of wrongdoing by the defendant corporation.

■ As we have indicated, we are of the opinion that Lambert was not acting within the scope of his employment when he left his bus, engaged in a verbal argument with plaintiff with reference to his intoxication, and which argument resulted in the battery complained of. The locale of the assault and battery occurred at a place in which Lambert, under his employment, was not required to stop to either discharge or take on passengers. The evidence discloses that the bus stop was across and on the opposite side of the intersection of Robinson and Main Streets.

■ The evidence supports Lambert's assertion that plaintiff's manner of driving his car between Walker and Robinson Streets east on Main Street, indicated that plaintiff was under the influence of alcohol. As a citizen Lambert was justified in detaining plaintiff for his delivery to the police. Lambert was not in that situation acting for the defendant company. Detaining or arresting a person found in the commission of an offense was no part of Lambert's employment. The evidence does not remotely disclose that when Lambert pulled his bus over toward the curb, thereby preventing plaintiff from moving forward, that he was performing an act to protect defendant's property or the safety of defendant's passengers, or to discharge or take on passengers. There had been no previous accident or collision requiring Lambert to stop at the place where he had the altercation with the plaintiff.

■ We have examined the citation of cases relied upon by plaintiff and find they lay down the general rule, which is not challenged, that in an action of tort or negligence against a defendant, the plaintiff must establish that the act committed by the servant or agent was within the scope of his authority as such servant or agent and in the course of his employment. Brown v. Saylor, 204 Okl. 154, 228 P.2d 187.

Plaintiff urges that Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880; Davis, Director General of Railroads v. Merrill, 133 Va. 69, 112 S.E. 628 and Tri-State Coach Corp. v. Walsh, 188 Va. 299, 49 S.E.2d 363, support his contention that Lambert was acting within the scope of his employment in committing the acts complained of.

In the first cited case a car ran into the rear of the Transit Company bus. The driver of the Transit Company left his bus to get information, as he was required to do under his employment, as to the name of the driver of the car and the license number of the offending car. In the opin-

ion of the Texas Court, it is stated [146 Tex. 428, 208 S.W.2d 881]:

"It is undisputed that Goodson, in keeping with his duties, went to Felder's car to get certain information, and while thus about his master's business and before he had finished his mission, committed the assault in question. * * *"

In the second cited case, a gateman at a railroad crossing was requested to raise the gate to permit plaintiff's intestate and companions to cross the railroad tracks. The gateman became incensed by the request that he raise the gates because of the lateness of the hour. He, however, went to his tower and raised the gate and while plaintiff's intestate and others were crossing the railroads he fired several shots resulting in the death of plaintiff's intestate. The Va. Court held that the gateman was primarily charged with the duty of protecting the traveling public from the passing trains of the railroad company, but this duty carried with it the obligation not to injure them himself while they were making the crossing.

In the third cited case a bus driver and a car driver when approaching a stop signal became involved in a dispute as to whether the bus driver had the right to make a right turn at the intersecting streets, or whether the driver of the car had the right to go forward prior to the bus driver's intended turn. The altercation resulted in a fight. In the opinion the court said [188 Va. 299, 49 S.E.2d 366]:

"Had the turn been wholly negotiated into State Street thus avoiding the real or apparent danger of collision, and Mooney had then abandoned the business of his master and committed the tort solely to gratify his personal feelings and not to accomplish or effect his insistence upon his right of movement, it would not have been within the scope of his employment; but here it was committed in the very act of negotiating the turn. It was part and parcel of Mooney's insistence and contention that he was properly operating the bus and intended to insist upon his rights in the highway."

Factually, each of these cases are dissimilar to the case at bar. In each case the servant and agent at the time of committing the act complained of, had not stepped aside from his employment, but was in the actual performance of a duty enjoined upon or entrusted to him by his employer.

The evidence here is that Lambert stepped aside from his employment. He stopped his bus at a place he was not authorized to stop at to either let off or take on passengers. There is no doubt that he intended to hold or detain plaintiff to deliver him over to the police. Whether he was fully justified in that act is not a necessary question for our decision. He was not acting either for the convenience or safety of the defendant's passengers or for the protection of the master's property or interest; however, unnecessary or unjustifiable we may view Lambert's acts and conduct as an individual, his employer, under the facts here established, cannot be held liable for the servant's unauthorized act.

In our recent decision in Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L. R.2d 1220, we reviewed many of our former opinions involving the question here presented. In this case we referred to Fairmont Creamery Co. v. Carsten, 175 Okl. 592, 55 P.2d 757; Crews v. Garber, 181 Okl. 373, 73 P.2d 855, in support of the principle that in order to hold one responsible for the tort of another, plaintiff must establish by competent evidence not only the relation of master and servant but that the wrongful act was committed in the course of the servant's employment.

The judgment of the trial court is reversed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, WILLIAMS and BACKBIRD, JJ., concur.