**GULF, C. & S. F. RY. CO. v. SMITH.**

No. 35926.

Supreme Court of Oklahoma.

May 11, 1954.

Rainey, Flynn, Green & Anderson, Oklahoma City, Curtis & Blanton, Pauls Valley, for plaintiff in error.

Ivy, Ivy & Ivy, Waurika, Bowie & Bowie, Pauls Valley, for defendant in error.

CORN, Justice.

U. S. Highway 77 is a heavily traveled highway which runs in an east and west direction as it enters the city of Wynnewood, Oklahoma. At the west edge of the city, within the corporate limits, the highway is intersected by defendant's railroad tracks (2), which run in a north and south direction at that point. About 11:05 p. m. on November 24, 1951, a collision occurred between defendant's southbound freight train and an automobile in which Frank Lee George was a passenger. As a result of injuries received in this accident he died shortly thereafter. Plaintiff, as administrator of deceased's estate, brought this action to recover damages for decedent's wrongful death, alleged to have resulted from defendant's negligence.

Plaintiff's petition plead numerous acts of negligence with respect to defendant's failure to operate its train in a proper manner, and to give proper warning of the train's approach. The petition set forth that some 60 feet west of the main track defendant maintained a switch track which parallels the main track, and that along such track and to the north of the crossing there was a loading platform

maintained by defendant, and in the general vicinity there were other buildings and objects which partially obscured the view of travelers approaching the crossing from the west. Further, on the night of the accident defendant had left a gondola type freight car, loaded with long poles, on the switch track some 90 feet to the north of the crossing, which further obstructed the view of those approaching from the west. Based upon the general allegations the petition alleged:

"(d) That the defendant, acting by and through its employees, agents and servants, was guilty of negligence and want of due care in permitting the view of said train to become obscured by the large gondola type freight car loaded with the long poles and by other objects and structures as set out in the petition."

The issues presented by the pleadings were tried to a jury. No necessity exists for making an extended statement of the evidentiary facts revealed by a voluminous record. It is sufficient to note that the evidence was sharply conflicting upon every issue presented to the jury, and this was particularly true as to the question of whether the view northward of any one approaching the intersection from the west, was obstructed by a car or cars on the switch track. Plaintiff offered evidence that there was a box car, as well as a flat car loaded with high line poles from 50 to 70 feet north of the crossing. Defendant's evidence was that the only car on the switch track at the time was a tie car, loaded with bridge material which was flat on the floor of such car and not in a position to obstruct the view.

By stipulation certain photographs offered by defendant were admitted in evidence. These photographs depicted the condition of this crossing two days after the accident and showed the position of the freight car in relation to the crossing, as well as the manner in which it was loaded. The evidence showed the tie car had not been moved from the time it was "spotted" at the point where located at the time of the accident. Neither this type of car, which was completely open, nor the material loaded thereon, would tend to obstruct a person's view of a train approaching from the north.

At the close of the evidence, presentation of which had required three days, the case was submitted to the jury late in the afternoon. After some deliberation they were taken to dinner and later returned and resumed consideration of the case. At nearly 9 p. m. the jury requested the bailiff to furnish the photographic exhibits admitted in evidence. The bailiff was unable to find the photographs and concluded same were locked in the trial judge's desk, the judge having absented himself from the courthouse to attend a movie theatre. Plaintiff's counsel discussed this by telephone with the judge, who instructed that the bailiff should come to the theatre after the desk keys. The bailiff informed the jury it would be necessary for him to go and secure the keys from the judge, whereupon the jury foreman stated the request would be withdrawn. Some time later the trial judge returned and upon learning of the situation, secured the photographs preparatory to handing them to the jury, when the jury (at 9:50 p. m.) returned a verdict for the plaintiff in the amount of $12,000.

The defendant immediately moved to set aside the verdict, which had not been recorded, upon the ground of prejudicial error resulting from the mishandling of the jury in respect to the matters mentioned. Considerable discussion and argument was permitted to take place in the presence of the jury, and at one point the jury foreman stated the decision had been made and " * * * our staying here will not make any difference, we are ready to go home." The foreman was granted permission to telephone his wife and, in a conversation which was audible in the courtroom, advised her "that he would not be home until next week."

Thereafter the trial judge made a lengthy statement in the record as to what had transpired, a portion of which is as follows:

" * * * The Court should not be excited, and the Court is not excited, and we should not allow ourselves to

be upset or get excited about this matter. It is the Court's opinion that since getting word from the Bailiff that you, ladies and gentlemen, wanted these pictures, and the Court was not here and the Bailiff could not find them, and if this verdict should stand, there might be a possibility of prejudicial error, and the Court is of the opinion we can correct it right now, in about ten minutes, if the jury will be patient and not become upset or agitated with us. We have spent three days in trying the case, and a good deal of the Court's time and your time and the attorney's time, with considerable cost to all parties involved, and my suggestion to the jury, although I understand that you did withdraw your request to the Bailiff for these photographs, but you did ask for these photographs, and rather than take a chance on doing someone an injustice, and out of an abundance of precaution, I believe I will ask you to reconsider this verdict, and if the Court Clerk will hand it to me, and the instructions of the Court, and the photographs, the exhibits, I will hand these back to you, Mr. Brown, who is foreman of the jury, and if the jury will I will appreciate it if you will reconsider your verdict in this case. I don't mean you have to re-read the instructions, and go over all the evidence, but go out and reconsider of your verdict, and take a poll on what you want to do, and the Court will await your pleasure, and when you have arrived at a verdict, you will let the Bailiff know, and he will inform the Court."

Defendant's objection against permitting the jury to reconsider the verdict, after having heard the argument in court, upon the grounds this was prejudicial to defendant was overruled and the jury retired for further consideration. Within 15 minutes, as shown by the record, the jury returned with a verdict for plaintiff for $12,000, and announced same was their verdict. Thereupon defendant again moved the court, prior to discharge of the jury, to set aside the verdict for the reason the jury had

heard all the argument in the matter and because the court's remarks had the effect of limiting the time of deliberation, so that the entire course of action was irregular, suggestive and highly prejudicial to defendant's rights. The motion was overruled and judgment rendered for plaintiff upon the verdict.

We are of the opinion the trial court erred in overruling defendant's motion to set aside the verdict because of the irregularity and prejudicial nature of the proceedings leading up to rendition of the verdict upon which this judgment was rendered.

██ In urging the existence of reversible error herein the defendant cites and relies upon two recent decisions. In the recent case of Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L.R.2d 1220, the trial court summarily denied the jury's request for certain depositions which had been received in evidence. Such action was held to be reversible error as being prejudicial to the enjoyment of the right of trial. In Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007, the trial court rendered a judgment for plaintiff upon a verdict which defendant contended was not the verdict the jury intended to return. The trial court then advised the jury to reconsider the matter and either re-submit the verdict that had been rendered, or to make up a new verdict. After a short deliberation the jury returned the same verdict and judgment was rendered thereon. This judgment was reversed on appeal, upon the ground the second verdict was not the free, deliberate, unbiased and conscientious judgment of the jurors agreeing thereto. Although in both of these cases it appeared there was some disagreement among the jurors upon certain matters, it is clear from examination of both decisions that the real foundation of such holdings is that the verdict of any jury must be the result of free, unbiased and deliberate consideration.

In the present case we are not called upon to determine the effect of the failure to furnish the evidence which the jury requested they be allowed to examine. The first verdict returned by the jury was not

final since not pronounced and recorded in open court. However, in our opinion the proceedings conducted in open court subsequent to the time the jury first returned from their deliberations were so irregular as to be highly prejudicial to the defendant. A verdict should be the result of sound judgment, dispassionate consideration and conscientious reflection. Williams v. Pressler, 11 Okl. 122, 65 P. 934.

■ As mentioned, the entire controversy was conducted in the presence of the jury, including the comment in open court by one juror concerning the expectation the jury would be called upon to remain in attendance for an undue period of time. The trial court's remarks, quoted in part heretofore, made after defendant's motion to set aside the first verdict, acknowledged the possibility of existence of prejudicial error in the proceedings up to that point. The court's following statements, although made in good faith, cannot be construed otherwise than being a statement that he already tacitly approved the verdict decided upon, but in view of what had transpired it would only be effective if they went through the formality of discharging their duty once again. In so advising the jury the court called attention to the time and expense already involved in the trial of the case, and further told the jury it was unnecessary to go over all the evidence and instructions again, but that it would be sufficient merely to reconsider the verdict already reached. This was particularly damaging in that the jury was permitted to "reconsider" without taking into account the very evidence which once had been requested, undoubtedly for the purpose of settling some question relative to the nature and condition of the crossing where the accident occurred. The unobstructed condition of the crossing was one of defendant's principal grounds of defense, and the photographic evidence clearly would have been of value to the jury when considering the matter.

Passing over consideration of the matters which had transpired up to that point,

it was the trial court's prerogative to request the jury to return a proper verdict. While any one matter mentioned in the court's discourse, standing alone, might be insufficient in itself to vitiate a verdict, when the remarks are considered in their entirety and in face of the fact that the entire argument was allowed to take place in the presence of the jury, it appears unlikely the verdict finally returned came as the result of sound judgment, dispassionate consideration and conscientious reflection.

■ A trial is a judicial examination and determination of issues, in this instance issues of fact, between the parties to the action. 53 Am.Jur.Trial, Sec. 2; 12 O.S.1951 § 551. The orderly course and conduct of trials, as the basis of an impartial, judicial determination of the issues, is regulated by statute or rule, although some matters are left to the trial court's discretion. The necessity for the trial court's complete control of the proceedings at all stages is everywhere recognized. In Patton v. Texas & P. R. Co., 179 U.S. 658, 21 S.Ct. 275, 276, 45 L.Ed. 361 is found the following statement:

"The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility."

We conclude that the nature of the matters which transpired in the presence of the jury, considered in connection with the court's remarks to the jury concerning the verdict, were so prejudicial to defendant as to preclude acceptance of the verdict finally returned by the jury.

Judgment reversed and cause remanded for new trial.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, O'NEAL and BLACKBIRD, JJ., concur.