### FAIRMONT CREAMERY CO. v. CARSTEN et al.

No. 26168.  Jan. 7, 1936.

Rehearing Denied Jan. 28, 1936.

Flansburg, Lee & Sheldahl and Pruett & Wamsley, for plaintiff in error.

Morris & Wilhite, for defendant in error Carsten.

PER CURIAM. This action was filed in the district court of Caddo county by Ed Carsten against Fairmont Creamery Company of Lawton, Okla., and Vernie Hart, seeking damages for personal injuries.

The parties will be referred to as they appeared in the trial court.

At the time the accident occurred, plaintiff and four other people were riding on a Chevrolet truck which was being driven by Sam Gifford, who owned the truck. Plaintiff and these four other people were seated on the floor of the Gifford truck, with their legs hanging over the left side of the truck, toward the center of the highway. The truck belonging to the defendant Vernie Hart, as it passed the Gifford truck, hit the foot of the plaintiff. The accident happened on September 16, 1933, at about midnight. Gifford, who had taken a party of ten or twelve people, including plaintiff and his wife, to the fair at Anadarko, was taking them home to Carnegie, and was about three miles and a half from Carnegie when the accident happened. The Hart truck was moving east on the highway and the Gifford truck west.

Hart was called as a witness by the plaintiff. He testified that he owned his own truck, a model A Ford; that he did a general trucking business, hauling whatever he could get to haul, being paid regular railroad rates, on a mileage basis, for transportation. He also testified that he operated a cream buying station at Weatherford. He rented the building from a third party. The Fairmont Creamery Company furnished the equipment for handling the cream. At this station he bought cream for the Fairmont Creamery Company, issuing its drafts for cream, and delivering the cream that he purchased, by truck, from Weatherford to Lawton, where the Fairmont plant was located, and was paid a commission on the purchases. The undisputed testimony was that when the accident happened, he was not hauling any of the cream purchased by him at his station. He testified, further, that he had an arrangement with Fairmont whereby they paid him regular railroad rates for all cream that he hauled for others to the Fairmont, and that each week he picked up cream from other independent buyers and hauled it to Lawton, where he was paid by the Fairmont the regular railroad rate, on a mileage basis, for the carriage of the goods. He also testified that he used his own pleasure as to when he picked up the cream, whether he did so or not, what conveyance he used, whether he

drove the same himself or had some one else do so for him. He owned his own truck, paid for his own gasoline and expenses of operation. The only obligation Fairmont owed him was that they pay him the regular mileage rate for transportation of the cream.

On the night in question, he picked up cream at the Southwestern Co-operative Creamery at Weatherford, and also at the place of business of a Mr. Calkins at Thomas. Both Southwestern Co-operative Creamery and Calkins were independent cream buyers. He had no other cream or other merchandise on his truck when the accident happened. He had nothing to do with the purchase of cream that he was hauling at that time. The Fairmont did not direct him to make this particular trip. On the night of the accident, Hart was performing no duties with respect to his cream buying station or with respect to any cream that he himself had purchased as an agent for Fairmont, but, on the other hand, was acting as a general trucker, a common carrier, hauling goods for Fairmont on a railroad mileage basis. He testified that he also hauled cotton seed, automobiles, furniture, and anything else he could get to haul for anyone; that he had a right to do as he pleased with his truck. The testimony showed that Fairmont had no right to direct Hart how he should deliver the cream, and although the Fairmont had suggested at some times when the trips should be made, he used his own pleasure as to when he made them. One of plaintiff's witnesses, a Mr. Thompson, testified that to the best of his knowledge Hart bought some eggs from him with a check or draft drawn on the Fairmont Creamery, prior to date of the accident, but he testified positively that Hart did not call upon him on the day of the accident. He had no eggs in the truck at the time of the accident.

Mr. Gifford testified that after the accident Hart came to him with an instrument and stated "I want to go to work and fill this out; I have got to, on account of my company; I have to send it in." The instrument was not offered in evidence and there is nothing in the record to show the contents of the same. Plaintiff alleged in his petition that at the time of the accident the defendant Vernie Hart was the agent of the defendant Fairmont Creamery Company, and was acting as its agent in driving the Ford truck.

The issues were submitted to a jury and a verdict was returned in favor of plain-

tiff, and against both defendants, for the sum of $1,251.10. The verdict was approved by the court and judgment rendered accordingly. In due time, the defendants filed their motion for new trial, which was overruled by the court.

The first assignment of error by the defendant Fairmont Creamery Company is that the court erred in overruling the demurrer of the defendant Fairmont Creamery Company to the evidence, and in refusing to direct the jury that Vernie Hart was not the agent or servant of the defendant company, and in submitting to the jury the issue of fact as to whether he was an employee or independent contractor. After the court had overruled the demurrer of the defendant Fairmont Creamery Company at the close of all of the evidence, the defendant Fairmont Creamery Company requested the following instruction:

"You are further instructed that the evidence in this case is insufficient to support a verdict in favor of plaintiff and against Fairmont Creamery Company, one of the defendants herein, and you should return a verdict in favor of Fairmont Creamery Company."

This requested instruction was submitted in writing to the court, and the court indorsed thereon his refusal to allow or give the same, to which the Fairmont Creamery Company excepted.

In Branham v. International Supply Co., 166 Okla. 273, 27 P. (2d) 354, the court held:

"Where the evidence is undisputed, the question of whether the relation of the parties is that of contractor and contractee or employer and employee is one of law for determination by the court."

The facts in that case are very similar to the facts in the case at bar.

In Southland Cotton Oil Co. et al. v. Pritchett et al., 167 Okla. 6, 27 P. (2d) 819, it was held:

"An independent contractor is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result or product of the work.

"In determining whether the relation between a principal contractor and another engaged in work on the subject-matter of the contract is that of master and servant or an independent contractor, the test is whether the principal contractor reserves the power to control the latter."

In this case, the evidence disclosed that the owner of the cotton had agreed to pay wagoner 15c per bale for loading and hauling cotton; that the nature of the work required him to employ assistants; that he employed two other men; that he furnished his own equipment; that the owner of the cotton did not furnish either the team, wagon, or assistants, and that it did not pay the assistants.

In White v. McGee, 157 Okla. 204, 11 P. (2d) 924, it was held:

"'An independent contractor is one who exercises an independent employment, contracts to do a piece of work according to his own method, and without being subject to the control of his employer, except as to the result of the work.' Tankersley v. Webster, 116 Okla. 208, 243 P. 745.

"Where parties have entered into a contract of employment, and the question is presented as to whether one of the parties is an independent contractor, and there is no conflicting evidence, and the same is reasonably susceptible of but a single inference, it is the duty of the court to construe the contract and determine as a matter of law whether the relation created by the employment is one of master and servant, or that of an independent contractor."

In that case, this court said:

"An examination of the evidence shows that the defendant Reece E. McGee was an independent contractor laying the pipe in question for the Marland Companies; that he hired the men, including the decedent, and discharged them; that the manner and method of doing the work was left entirely to him; that the Marland Companies paid him for the work on the basis of 22½ cents per lineal foot; that the Marland Companies had a representative on the job to see that the ditch was dug to a certain depth according to the specifications; that said companies had no supervisory control over the employees, machinery, or tools with which the work was performed; that the defendant McGee exercised his own judgment with reference to the method and manner of doing the work; that the Marland Companies were only interested in seeing that the result of the work was in accordance with their plans and specifications. A review of this record removes any question of doubt as to the correctness of the sustaining of the demurrers to the evidence interposed by the Marland Companies."

In Catherine Burns v. Michigan Paint Company, 152 Mich. 613, 116 N. W. 182, 16 L. R. A. (N. S.) 816, the facts were that William Boyseau was a licensed expressman. He owned a horse and wagon which he was driving. He was delivering goods for the Michigan Paint Company, defendant. The wagon had attached to it a sign

bearing the name of the defendant. Immediately after the accident, he stated to a policeman that he was working for the defendant. He and the defendant's manager testified that he was to deliver goods for the defendant for $15 per week. He was to furnish the horse and wagon. He was not bound to do the work himself, but was at liberty to hire employees, and he could determine his own route. He exercised this liberty. Some times he delivered the goods, some times he had drivers do so. He agreed to do, and did do, similar work for o'hers. The court held in this case that under this state of facts he was an independent contractor, for whose negligence the defendant was not responsible, and held that the court should have sustained the motion of the defendant company for a directed verdict.

In the note in 16 L. R. A. (N. S.) 816, it is stated:

"The earlier cases upon this subject are collected in a note to Richmond v. Sitterding, 65 L. R. A. 468. As is there shown, the cases generally hold that draymen, truckmen, cartmen, etc., are regarded as independent contractors, unless there is specified evidence that control was exercised over them by the owner of the goods which were being hauled.

"The later cases are to the same effect, and the decisions genera'ly turn upon the question whether the owner of the goods exercised or did not exercise, control over the goods during the process of hauling."

The relation of master and servant is discussed in the case of Robert Wyllie v. James Palmer, Jr., 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285, wherein it is said:

"The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the time and in respect to the very transaction out of which the injury arose. Thorpe v. New York Cent. & H. R. R. Co., 76 N. Y. 406, 32 Am. Rep. 325; Dwinelle v. New York Cent. & H. R. R. Co., 120 N. Y. 117, 8 L. R. A. 224; Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Wood v. Cobb, 13 Allen (Mass.) 58; Kimball v. Cushman, 103 Mass. 194, 4 Am. Rep. 528; Ward v. New England Fibre Co., 154 Mass. 419. The fact that the party to whose wrongful or negligent act an injury may be traced was at the time in the general employment and pay of another person, does not necessarily make the latter the master, and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct. The rule on this subject is well stated by a learned author on the law of negligence as follows: 'He is to be deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details.' * * * Shear & Redf. Neg. (4th Ed.) p. 269."

The undisputed evidence of the relation between Vernie Hart and Fairmont Creamery Company is reasonably susceptible of but a single inference, to wit, that he was an independent contractor. The district court should therefore have determined as a matter of law that the relation was that of independent contractor. We are of the opinion, and hold, that the demurrer of the defendant Fairmont Creamery Company to the evidence should have been sustained, and the jury should have been instructed by the district court to find for the defendant Fairmont Creamery Company. Taking this view of the case, we deem it unnecessary to consider the other assignments of error.

It is urged by plaintiff that the only record with reference to the action of the court on the demurrer of the defendant to the evidence was the court reporter's record showing. "The Court: Overruled," and that there was no entry on the journal of the court as a judgment or order thereon; also that the record made by the court reporter does not specify clearly the relief granted or order made. In support of this contention, plain'iff cites section 432, O. S. 1931, which provides:

"432. Judgments and Orders to Be Entered on Journal. All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action"

—and also cites Lillard v. Meisberger, 113 Okla. 228, 240 P. 1067, and City of Tulsa v. Kay, 124 Okla. 243, 255 P. 684. The cases cited have no application to an order of the court overruling a demurrer to the evidence. In each of these cases the facts were that no order overruling motion for new trial was ever signed and filed in the case, and the only record was a minute made by the clerk. The order of the court overruling the demurrer to the evidence is not a final order from which an appeal can be taken, whereas the judgment and order overruling or sustaining motion for new trial is a final order upon which the jurisdiction on appeal depends. Section 359, O. S. 1931, with reference to requested instructions, and the action of the court thereon,

596

was fully complied with by the defendant.

We therefore hold that the district court should have sustained the demurrer of the defendant Fairmont Creamery Company to the evidence, and should have directed the jury to render its verdict in favor of said defendant. The judgment against Fairmont Creamery Company is therefore reversed, and the case therefore remanded to the trial court, with direction to enter judgment for the defendant Fairmont Creamery Company, and against the plaintiff.

The Supreme Court acknowledges the aid of Attorneys Louis G. Kneeland, Paul N. Lindsey, and Jerome Hemry in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Kneeland and approved by Mr. Lindsey and Mr. Hemry, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, WELCH, CORN, and GIBSON, JJ., concur. RILEY and PHELPS, JJ., absent.