**TULSA GENERAL DRIVERS, WARE-HOUSEMEN, AND HELPERS UNION, Local No. 523, an unincorporated association, Plaintiff in Error.**

**v.**

**Fred CONLEY, Defendant in Error.**

**No. 36606.**

Supreme Court of Oklahoma.

Oct. 11, 1955.

Ungerman, Whitebook, Grabel & Ungerman, William Leiter, Tulsa, for plaintiff in error.

Harold S. McArthur, Tulsa, for defendant in error.

PER CURIAM.

Plaintiff filed this action in the District Court of Tulsa County, on October 4, 1951, alleging in substance that one Lassiter was a member of defendant, Tulsa General Drivers, Warehousemen and Helpers, Local No. 523, and was their agent; that plaintiff was an employee of Gates Hardware Company located at 317 East Brady, Tulsa, Oklahoma; that the premises thereof were being picketed by defendants; that at the noon hour on April 11, 1951, plaintiff left said premises, crossed the picket line composed of Lassiter and another picket and went to 211 South Elgin, Tulsa, Oklahoma; that Lassiter followed plaintiff to said place and there assaulted plaintiff with a board 1 x 2 inches, 24 inches long, studded with nails; that as a result of such assault plaintiff sustained injuries, etc., for which he was hospitalized; praying for $25,000 actual damages, and · for $10,000 exemplary damages for malice and oppression of Lassiter and said defendant union.

Defendant union answered by way of general denial. Although Lassiter was sued as a defendant, service was not obtained upon him and this cause was tried as against defendant union and Perry Shryock, secretary-treasurer of said defendant union. Upon the issues thus drawn trial was had to a jury which resulted in a verdict and judgment for plaintiff against defendant union in the sum of $1,000 actual damages and $2,000 exemplary damages. From this judgment, defendant union appeals.

At the close of plaintiff's evidence, defendant union and defendant Perry Shryock, interposed a demurrer upon the grounds that the evidence, together with all reasonable inferences deduced therefrom were wholly insufficient to sustain a cause of action; that the evidence affirmatively shows that there is no agency existing; and further reason that the evidence reveals that the act took place at a location four and one-half blocks away from where the picketing was taking place, and therefore there was a complete departure from any possible act of agency, or within the scope of the alleged agent's authority. Said demurrer was sustained as to the defendant Perry Shryock but overruled as to defendant union.

At the close of all the evidence, defendant union moved for a directed verdict upon the grounds as recited in its demurrer under plaintiff's evidence. The motion for a directed verdict was likewise overruled by the trial court.

On and for some period of time before April 11, 1951, the plaintiff was an employee of Gates Hardware Company, located at Elgin and Brady streets in the city of Tulsa; approximately five weeks prior to said date, the defendant, Don Lee Lassiter, who was then an employee of said company, together with another employee, a person by the name of Moser, was discharged from such employment. On the day following the discharge of Lassiter and Moser, one Robert J. Smart, business representative of defendant union, called upon Mr. George Gates, one of the owners of Gates Hardware Company, and requested the re-employment of Lassiter and Moser. Upon refusal of this request he informed Gates that a picket line would be established immediately. Either that afternoon or the next day such picket line was established and during the course of the picketing both Lassiter and Moser were participants in same. During the course of such picketing, which lasted for about eight weeks, the said Lassiter made various and sundry threats against the employees of Gates Hardware Company, at such times inviting them out to fight and using very obscene language in his berating of them. Shortly after the picket line was established a member of the Tulsa Police force was detailed to duty there, and was on duty at all times the picket line was in force. This police officer testified that he took the names of all pickets, and that he obtained such names from their union cards; that Lassiter was one of those whose name was taken from such union card. He also testified that he observed the union representative, Smart, at the picket line during the course of the picketing on at least eight different times. On the above date of April 11, 1951, the plaintiff, during

the noon hour left the Gates Hardware Company, and proceeded to the Tom White Tire Company located at 211 South Elgin, some 4½ blocks away for the purpose of paying on an account he owed to the Tom White Tire Company. Upon leaving the Tom White Tire Company the said Lassiter stepped up from behind him, and with a 1 x 2 board, approximately 3 feet long, from which a nail was protruding, assaulted and struck the plaintiff about the head and shoulders, knocking plaintiff to the pavement and inflicting upon him various and sundry abrasions including a skull fracture, from which plaintiff was hospitalized. During the course of the beating of plaintiff two patrol car officers of the Tulsa Police force arrived on the scene and placed the said Lassiter under arrest. He was taken to the police station where complaint was lodged against him by plaintiff prior to plaintiff's going to the hospital. On that same afternoon the said Lassiter again appeared as a picket in the picket lines at the Gates Hardware Company. He remained as such picket for a few days after that.

Plaintiff testified that the said Lassiter had been employed by Gates Hardware Company about six months prior to the establishment of the picket line; that he, plaintiff, was an order clerk, and Lassiter was an order clerk; that he assisted Lassiter in learning the stock and prior to the establishment of the picket lines was on good terms with Lassiter; that they had never before had any trouble; that while Lassiter was working for Gates he showed plaintiff his union card and some application blanks for membership. He did not say whether or not Lassiter ever asked him to become a member of the union.

After the trial court overruled defendant's demurrer to the foregoing proof, the business representative of defendant union, Smart, testified in substance, that neither Lassiter nor Moser were members of defendant union; that in fact, none of the 17 employees which came under the jurisdiction of this particular union, and who were working for Gates Hardware Company were members of defendant union; that he did, on the complaint of Lassiter and Moser and others involved, contact Gates for the purpose of discussing unauthorized labor practices which were occurring at the Gates Hardware Company; that he did request the re-employment of both Lassiter and Moser and upon being refused established the picket line; that he had the placards painted and furnished same to the pickets; that Lassiter was never authorized to act as a picket and of his twenty-four visits to the picket line to see if they were doing their duties as pickets he did not observe the said Lassiter acting as a picket; that if Lassiter was acting as a picket he was not so authorized; that he observed the police officer at the scene and requested his reason for being there.

The defendant in presenting this appeal has propounded several meritorious reasons for reversal. However, for the purpose of this opinion it is only necessary to consider one, that is, as set forth under his propositions II and III, and are as follows:

"Proposition II. The assault and battery by Lassiter was, as a matter of law, an act outside the scope of his alleged "employment", and defendant is not liable therefor; and,

"Proposition III. Lassiter's assault and battery at a place wholly unconnected with his alleged "employment" as a picket, being at a place at which such "employment" did not require him to be, as a matter of law, an act outside the scope of any alleged "employment", and defendant was not liable therefor."

From the facts in evidence it cannot be logically inferred that Lassiter at the time of the assault and battery on plaintiff was engaged in the business of defendant union and acting within the course of his employment. On the contrary, the inference is a plain one that he was then engaged solely in the pursuit of his own purposes.

None of the evidence herein lends any countenance to the claim that Lassiter at the time of the assault was engaged in picketing. Whether he was in the scope of his employment is a question apart from whether he was engaged upon his employment at the time of the assault. Its decision involves consideration of whether

it occurred within the time of his employment, or not, and at a place, though outside of the course of employment, which either as a matter of law, or as one of fact, could be regarded as an incidental or slight deviation, or, if the deviation was substantial, whether it was so substantial as to constitute it a complete departure, and the weighing of the extent and nature of the deviation, the surrounding facts which characterize and explain it, and the intention and purpose of its making.

The assault and battery happened during the noon hour and at a time when Lassiter had authority as a picket. The period was not so unreasonably disconnected with the authorized period of employment as to take the conduct of Lassiter outside the period for the scope of his employment, which "denotes the field of action which is a servant." The conduct of Lassiter can only be held to be within the scope of his employment provided it be not unreasonably distant from the authorized area of his service. The unauthorized conduct of a servant may be within the scope of his employment when it is found to be similar to or incidental to the conduct authorized. This case must be found to fall within this class if the judgment of the trial court is to be sustained. It cannot be said that there is any similarity between peaceable picketing and an assault and battery to satisfy one's own personal desires or vengeance. Whether the extent of departure from the scope of his employment, the area of his service, or the nature of his conduct, was so unreasonable as to make his deviation an independent action rather than one incidental to his employment, is a question of degree. Unquestionably the particular matter Lassiter was engaged upon was outside the scope of his employment.

■ It has been almost universally held that in order to hold one responsible for the tort of another it must be made to appear by competent evidence not only that the relation of principal and agent existed but that the tortious act was committed in the course of the employment. Fairmont Creamery Co. of Lawton v. Carsten, 175 Okl. 592, 55 P.2d 757; Crews v. Garber, 181 Okl. 373, 73 P.2d 855.

There is sufficient evidence in the present case of the establishment of an agency, and that the relationship of master and servant existed, and therefore the question in issue is whether, in contemplation of law, the assault was committed within the scope of the agent's or servant's authority.

■ Pertinent thereto there is said in Cooley on Torts (3rd) Vol. 2, page 1037:

"It is not, as a general rule, within the scope of the servant's employment to commit an assault upon a third person and the master is not liable for such an assault, though committed while the servant was about his master's business."

And in those cases where the master has been held liable the assaults were made to protect the master's property from trespass or spoilation being at the time committed. And so in the case of an assault upon passengers to whom the master owes the duty of safe carriage. The basis of the liability of the master in such cases has been recognized by this court in Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1; Chicago, R. I. & P. R. Co. v. Radford, 36 Okl. 657, 129 P. 834.

The authority of the servant in each of those cases differs both in character and degree from that which obtained in the instant case. Therein successful performance involved immediate action of some kind in opposition to the will of the other and therefore was to be anticipated by the employer.

No such action can properly be contemplated as an incident to the exercise of ordinary authority to act as a peaceable picket. And in absence of some additional authority contemplating extraordinary action, there exists no basis for holding such extraordinary action to be within the scope of the servant's authority.

It can hardly be seriously contended that one employed as was Lassiter, would be acting within the scope of his employment had he been at the locus of the assault, and there assaulted some person wholly foreign to Gates Hardware Company, or some person who might have spoken disparagingly of the picketing. Anything

more completely outside of the functions in which he was employed could hardly be conceived. Master and employers may be held to answer for damages occasioned by their servants in the exercise of the functions in which they are employed. However, in reason, they cannot be held responsible generally for all wrongful conduct of which they may be guilty outside of such functions.

This court has long been committed to the rule, that, "In order to hold master or principal responsible for tort or negligence of his servant or agent, plaintiff must establish that act committed by servant or agent was within the scope of his authority as such servant or agent, and in the course of his employment". See, Oklahoma Ry. Co. v. Sandford, Okl., 258 P.2d 604; Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L.R.2d 1220.

The relation of master and servant in such act as was done by Lassiter, of which complaint is made by plaintiff, does not exist. Such act was unlawful and wrong, but was not done in performance of any duty imposed upon him by his employment, nor done within the scope of his employment, nor in the furtherance of his principal's business, and therefore the defendant union, who employed him as a picket, cannot be held responsible for such act.

Having reached this conclusion it therefore follows that the trial court erred in its disposition of the demurrer and motion for directed verdict.

The judgment is reversed and cause remanded with directions to vacate the judgment and dismiss the action.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Reed, and approved by Commissioners Nease and Crawford, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.