Roy E. ALLISON, Plaintiff in Error,

v.

GILMORE, GARDNER & KIRK, INC., a
corporation, Defendant in Error.

No. 38610.

Supreme Court of Oklahoma.

March 1, 1960.

Fenton & Fenton, Oklahoma City, for plaintiff in error.

Welcome D. Pierson, Oklahoma City, for defendant in error.

HALLEY, Justice.

This action was filed in the District Court of Oklahoma County by Roy E. Allison against Kenneth C. King and Gilmore, Gardner & Kirk, Inc., to recover compensatory and punitive damages.

Plaintiff alleged that Kenneth C. King committed an assault and battery upon him, causing serious injuries to his jaws, head and teeth, while King was the agent, servant and employee of defendant Gilmore, Gardner & Kirk, Inc., and acting within the scope of his agency and employment.

At the conclusion of plaintiff's evidence, Gilmore, Gardner & Kirk, Inc., demurred to such evidence, which the court sustained. Kenneth C. King introduced his evidence and rested; and the plaintiff dismissed his action without prejudice as against defendant, King. Plaintiff's motion for a new trial was overruled, and in the order the court stated that the court had sustained the demurrer to the evidence of plaintiff upon the ground that the evidence of plaintiff and the reasonable inferences to be drawn therefrom was not sufficient to show that King was acting as the agent, servant, or employee of defendant Gilmore, Gardner & Kirk, Inc., or that King was acting within the scope of any employment or agency of that defendant at the time plaintiff was struck and injured by King.

We shall refer to the parties as they appeared in the trial court, or by name. The plaintiff submits as its only proposition that:

"The trial court erred in sustaining the demurrer to plaintiff's evidence of defendant Gilmore, Gardner & Kirk, Inc."

The plaintiff did not dismiss without prejudice as to defendant Kenneth C. King until he had testified for himself and also had called J. R. Brown as a witness. The court stated in his order overruling the plaintiff's motion for a new trial the grounds upon which he sustained the demurrer to plaintiff's evidence and stated in substance that the evidence was not sufficient to show that Kenneth C. King was acting as agent, servant or employee of Gilmore, Gardner & Kirk, Inc., or that he was acting within the scope of any employment or agency for that concern at the time plaintiff was struck and injured by Kenneth C. King.

The plaintiff alleged in his amended petition that King was acting as the agent, servant and employee of Gilmore, Gardner & Kirk, Inc., and was acting within the scope of his agency and employment. The answer of the present defendant was verified and admitted the employment of King, but specifically denied that he was acting with authority or permission or engaged in the scope of his employment at the time and place of the alleged assault alleged in the petition of plaintiff.

Plaintiff states that the testimony material to the issue of agency is found in the

testimony of Francis Fleming, Kenneth C. King and the plaintiff himself.

Mr. Fleming testified that at the time of the incident involved, he was the executive secretary of the Oklahoma Gasoline Retailers Association and that the plaintiff Roy Allison was president of that organization. Roy Allison testified that at the direction of the Association he and Fleming were making a check of various locations to test the temperature of gasoline to determine if gasoline was being lost due to differential between the temperature of gasoline in delivery trucks and the temperature of the underground tanks.

Plaintiff and Fleming had checked the temperature of gasoline at Harry Smith Station in Oklahoma City and intended to make an extensive investigation in Oklahoma City and over the State for the dealers at service stations. They were en route to check at the Jess Scruggs Conoco Station about a block from the Village. They noticed a gasoline transport truck, owned by Gilmore, Gardner & Kirk, Inc., which was being driven by Kenneth C. King, unloading gasoline into underground tanks at Lonnie Eggleston's Service Station. Plaintiff decided to check the temperature of the gasoline in the truck and in the ground tanks to get the temperature above and below the ground at the same time.

Plaintiff did not see the truck driver, King, but talked to Mr. Eggleston and got his permission to check the temperature of the gasoline before it went into the ground tanks and was given such permission from Mr. Eggleston. Plaintiff then went to the rear of the truck and up a catwalk and forward to the front compartment of the truck where he unrolled the cord of a gauge and dropped the gauge into the gasoline. While plaintiff was making this check Kenneth C. King approached the truck. Francis Fleming was standing on the ground at the rear of the truck. He said that Kenneth King used some very foul and abusive language to Mr. Allison and ordered him down off the truck.

He testified that King then went up onto the top of the truck, grabbed plaintiff by the arm and threatened to knock him off the truck; that King stated "you know what the trouble is" and "this gauge is going to get you into trouble." Plaintiff further testified that King grabbed his arm and picked him up from one side of the catwalk and put him on the other and plaintiff went to the back of the truck and started down, and King shoved him down the ladder, and King was still using profane language and Fleming reached out to get the temperature gauge, and King hit the plaintiff from behind in both jaws and in the ribs.

The evidence shows that King was in the general employment of Gilmore, Gardner & Kirk, Inc., as a truck driver and on the date of the incident above described was driving a truck owned by his employer and making a delivery of gasoline to the station of Lonnie Eggleston. It was this gasoline that plaintiff was testing.

King testified that he was responsible for the gasoline and that after he got it in the tank it belonged to Phillips Petroleum Company, and that Gilmore, Gardner & Kirk, Inc., probably did not know that he was at this particular station at this time, because he received his orders from the dispatcher of Phillips Petroleum Company; that his employer had employed him to haul gasoline products wherever Phillips directed.

On cross-examination the plaintiff testified that he had complained to King that he had been losing gasoline on account of temperature, and that there is vapor coming from the dome plates on top of the truck when they are open, and that there is always a little hazard of fire.

Plaintiff also testified that he did not secure the permission of King to climb upon the truck, and that he did not call the office of the owner of the truck "that day" and ask their permission to climb upon the truck.

Kenneth C. King also testified that while he was employed by Gilmore, Gardner & Kirk, Inc., but that "at the time of this

fight I was working for myself." The attorney for plaintiff asked the witness, King, the following questions and the answers were as follows:

"Q. State to the jury whether you were employed by Gilmore, Gardner & Kirk to deliver gasoline to this particular station, Lonnie Eggleston's station?

"A. I drive a truck for them. They probably didn't even know that I was going to this particular station, either Gilmore, Gardner or Kirk, because the orders that I received at that time came from Phillips' dispatcher, Ray McCullough.

"Q. Did your employer, Gilmore, Gardner & Kirk, employ you to haul gasoline products and take them to various Phillips stations, wherever they directed you to take them?

"A. Yes, sir.

"Q. I believe that is all with this witness at this time, if the Court please."

The incident here involved occurred July 19, 1957, and Kenneth C. King testified that about July 1, 1957, he delivered a load of gasoline to the Phillips Station belonging to the plaintiff, Roy Allison, who walked up to King, and said, "Do you know that I am losing a hundred gallons a load every load that you unload there?" King said he asked him what he meant and Allison replied, "You know what I mean." That Allison went into the station and brought back a letter from the Association, he assumed, and drove away very mad. That he next saw Allison again on July 9th at J. R. Brown's station; that each truck compartment contains a seal whose numbers he wrote down in a daybook; that Mr. Allison had two of the seals on his tank in his hands, and King handed him another seal that was broken, and that several words were then spoken between them. This testimony has some bearing upon the incident here involved because it indicates that relations between King and Allison were not friendly when the incident here involved occurred.

Plaintiff appears to rely principally upon the case of Ada-Konawa Bridge Co. v. Cargo, 163 Okl. 122, 21 P.2d 1, 5. In that case the plaintiff was shot and wounded by one held to be an employee of the defendant and authorized to collect tolls at a toll bridge, while plaintiff was driving his car across the bridge without having paid the toll. We have examined that case carefully. In the body of the opinion it is stated that the bridge company was bound under the applicable statutes to keep the toll bridge in safe condition for travel, day and night, and that the toll gatherer was authorized by law "to prevent all persons or vehicles from passing through his gates" until he had paid the toll, and that if any person forcibly or wilfully passed over the bridge without having paid the toll he was liable for a penalty. The facts in that case clearly made the employee the agent and servant of the bridge company and imposed upon him the duty to prevent the very act being done by the plaintiff when he wounded the plaintiff, who was engaged in using the bridge without paying the toll. He was acting in the performance of his duty. This Court affirmed the judgment of the trial court for the plaintiff. In the seventh paragraph of the syllabus this Court announced the rule to be as follows:

" 'The general rule is that a master or principal is liable for the tortious acts of his servant or agent where such acts are incidental to and one in furtherance of the business of the master or principal, and this is true, although the servant or agent acted in excess of the authority conferred upon him, or willfully or maliciously committed the wrongs.' Mansfield v. Wm. J. Burns [International] Detective Agency, 102 Kan. 687, 171 P. 625, L.R.A.1918D, 571."

In the foregoing case the employee who fired the shot that injured plaintiff was clearly acting within the scope of his employment. The court properly held that the question of whether or not the act of the employee in shooting the plaintiff, was

lawful or unlawful was a proper question to be submitted to the jury.

The defendant points out that the plaintiff makes the following argument in his brief, to-wit:

"King may have been acting to protect his employers' truck which might have been damaged in case a fire had resulted from plaintiff's activities. King may have been acting to prevent plaintiff from making a test of gasoline which at that very time King was delivering for his employer to a customer of his employer. King may have been acting to enforce a demand that plaintiff withdraw the gauge from a tank compartment of his employers' truck and to enforce a demand that plaintiff descend from the top of his employers' truck."

Defendant asserts that where no positive proof has been offered on a given point, the jury is not entitled to speculate on what "may have been" and thus base an inference upon inference, and that there is an inference that the acts of King were done within the scope of King's employment, and then contend that based on this inference other inferences were created which are not supported by the evidence. Plaintiff states that in every case the determining factor is whether the acts done by the servant were done while he was acting within the scope of his employment. Here the testimony of the plaintiff clearly established that the scope of King's employment was to drive a truck and haul gasoline.

In 1951 this Court decided the case of Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L.R.2d 1220. The Court pointed out that in the Ada-Konawa Bridge case, supra, the admitted duties of the employee who fired the shot that injured the plaintiff, had duties to keep the bridge in repair and to "keep and prevent persons from passing over the same who did not pay the legal toll", as well as collecting the toll from those passing over the bridge. Under these facts we think the court properly held that whether the employee who fired the damaging shot acted lawfully or unlawfully was a proper question for the jury.

In the case before us the facts are entirely different from the facts in the toll bridge case, supra. The facts in the Hill v. McQueen case, supra, are in substance as follows:

"McQueen had formerly been employed by the Johnston Seed Company and at the termination of his employment had executed a note to the seed company for approximately $4,800.00. McQueen did not pay the note and sometime after severing his employment with the seed company was elected secretary of the Oklahoma Seedmen's Association. At the same time McQueen was elected secretary, one L. C. Hill, General Manager of the Johnston Seed Company, was elected president of the association. The annual meeting of the Oklahoma Seedmen's Association was being held in Oklahoma City. Both Hill and McQueen were present at the meeting. Before going to the meeting the president of the Johnston Seed Company had instructed Hill while at the meeting to discuss with McQueen the payment of the note which he had executed to the company. At the close of the meeting Hill approached McQueen and told him that the president of the Seed Company had asked him to discuss the balance due on the note with him and inquire what he was going to do about it. 'Angry words ensued, culminating in the assault.' McQueen sued both Hill and the Johnston Seed Company for damages which he contended he sustained in the fight with Hill. The trial judge submitted the case to the jury and the jury returned a verdict in favor of the plaintiff, McQueen, and against both Hill and the Johnston Seed Company for the sum of $7,500.00."

This Court held that the acts of Hill in engaging in a fight with McQueen were not within the scope of Hill's authority as the agent of Johnston Seed Company and that the trial court should have sustained a demurrer to the evidence of Johnston Seed Company.

In the opinion in Hill v. McQueen, supra, the court distinguishes the bridge case above discussed and also the earlier case of Chicago R. I. & P. Ry. Co. v. Radford, 36 Okl. 657, 129 P. 834, wherein a railroad was held liable where a train auditor caused the arrest of a passenger who refused to pay the required fare. In distinguishing the two cases last mentioned the Court said:

"The authority of the servant in each of those cases differs both in character and degree from that which obtained in the instant case. The payment of the toll in the one case and the fare in the other was a condition precedent to the enjoyment of a right or privilege. The duty of the employee in substance was to get the toll or fare or to withhold the enjoyment of the right or privilege. Successful performance involved immediate action of some kind in opposition to the will of the other and therefore was to be anticipated by the employer.

"No such action can properly be contemplated as an incident to the exercise of ordinary authority to collect indebtedness. And, in absence of some additional authority contemplating extraordinary action, there exists no basis for holding such extraordinary action to be within the scope of the servant's authority. * * *" [204 Okl. 394, 230 P.2d 485.]

It is also announced in the body of the opinion in Hill v. McQueen, supra, that:

"In order to hold one responsible for the tort of another it must be made to appear by competent evidence not only that the relation of principal and agent existed but that the tortious act was committed in the course of the employ-

ment. Fairmont Creamery Co. [of Lawton] v. Carsten, 175 Okl. 592, 55 P.2d 757; Crews v. Garber, 181 Okl. 373, 73 P.2d 855."

In Cooley on Torts, (3rd Ed.) Vol. 2, p. 1037, it is said:

"It is not, as a general rule, within the scope of the servant's employment to commit an assault upon a third person and the master is not liable for such an assault, though committed while the servant was about his master's business."

In the recent case of Tulsa General Drivers, Warehousemen and Helpers Union, etc. v. Conley, Okl., 288 P.2d 750, 754, this Court was considering an assault by a "union picket" upon the plaintiff who was attempting to cross a picket line set up by the Union, and held that the Union was not liable upon the ground that the act of the picket was not within the scope of his authority. It was said in the opinion that:

"This court has long been committed to the rule, that, 'In order to hold master or principal responsible for tort or negligence of his servant or agent, plaintiff must establish that act committed by servant or agent was within the scope of his authority as such servant or agent, and in the course of his employment'. See, Oklahoma Ry. Co. v. Sandford, Okl., 258 P.2d 604; Hill v. McQueen, 204 Okl. 394, 230 P.2d 483, 22 A.L.R.2d 1220.

"The relation of master and servant in such act as was done by Lassiter, of which complaint is made by plaintiff, does not exist. Such act was unlawful and wrong, but was not done in performance of any duty imposed upon him by his employment, nor done within the scope of his employment, nor in the furtherance of his principal's business, and therefore the defendant union, who employed him as a picket, cannot be held responsible for such act.

"Having reached this conclusion it therefore follows that the trial court

erred in its disposition of the demurrer and motion for directed verdict."

We are impelled to conclude that there was nothing connected with the employment of the truck driver, King, whose duties were to drive the truck of the defendant and deliver gasoline, that would warrant his fighting with plaintiff and did not come within the scope of his employment. The judgment of the trial court in sustaining a demurrer to plaintiff's evidence was justified and it is hereby affirmed.