George **BEARD**, Appellant,

v.

Hubert **RICHARDS** and Leonard
Salmons, Appellee.

No. 71007.

Supreme Court of Oklahoma.

Nov. 12, 1991.

Patrick E. Carr, Carr & Carr Attys., Tulsa, for appellant.

Larry E. Rahmeier, Bassman, Mayberry, Scarth & Rahmeier, Claremore, for appellee.

**ALMA WILSON, Justice:**

This is an appeal from an order awarding attorney fees and costs pursuant to 23 O.S.Supp.1986, § 103. The first impression issue presented is: Whether a plaintiff's claim against a defendant "was not well grounded in fact" and "unwarranted by existing law", if the defendant prevails on a directed verdict? *We conclude:* 1) a claim or defense of a non-prevailing party is well grounded in fact where the party has presented prima facie evidence which, together with all inferences to be drawn therefrom, if unrebutted, establishes a set of facts to support a judgment in favor of the non-prevailing party on the claim or defense; and, 2) a claim or defense of a non-prevailing party is warranted by existing law where the party asserts a recognized theory of law which would support the claim or defense. *We hold* that plaintiff/appellant's claim against defendant/appellee was well grounded in fact and warranted by existing law.

The facts which gave rise to the claim for personal injury damages are that George Beard, plaintiff/appellant, (Beard), a slight man, sixty years of age, was traveling to his employment site as a toll booth attendant for the Turnpike Authority. Hubert Richards, defendant, (Richards), six foot in height and 31 years of age, was driving a tractor-trailer vehicle owned by Leonard Salmons, defendant/appellee, (Salmons), and in the process of hauling a load for Salmons. Beard and Richards were driving on a local turnpike, when each became frustrated with the driving of the other. As they approached the turnpike toll-booths, Beard stopped his automobile so that Richards could not proceed through the toll passage. Beard and Richards exited their vehicles, and as Beard approached Richards, he struck Beard with a two-foot iron bar, breaking Beard's arm. Then, Richards proceeded to pay the toll and move his truck through the toll gate before the police were summoned.

Beard sought damages for the personal injury caused by Richards' assault and battery. Beard named Richards and Salmons, as Richards' employer, as defendants.

Richards cross-claimed for malicious prosecution. Salmons filed a motion to dismiss and a motion for summary judgment, asserting that both his truck and the driver, Richards, were leased to Roadrunner Freight Systems, Inc. Thus, Salmons argued that he had no liability under the theory of respondeat superior because Roadrunner had exclusive control of Richards at the time of the injury. The trial court denied Salmons' pretrial motions.

The case proceeded to a jury trial. In Beard's case-in-chief, Salmons testified that Roadrunner was responsible for the direction and control of Richards, including the selecting, hiring, firing, supervising, directing, training, wages, hours, pay adjustments and employee grievances; in other words, that Roadrunner was the employer of Richards. Beard introduced a copy of the "Independent Contractors Agreement" between Roadrunner and Salmons. (Plaintiff's Exhibit 9). Beard's attorney questioned Salmons extensively about Salmons' Independent Contractor Agreement with Roadrunner. Salmons admitted that the agreement specifically provided that the drivers, drivers' helpers or laborers were to remain and be employees of Salmons; that Salmons would have exclusive supervision and control of the drivers; that Salmons would be fully responsible as the employer and would select, hire, fire, direct, train, pay, and insure the employees; and, that Salmons could reject any load and direct the driver as to stops during any haul.

Beard presented testimony of Richards that Salmons had the right to hire and fire him, but that Roadrunner decided when and where to originate a haul, the destination and the destination time. Richards also testified that on the date of the altercation with Beard, he (Richards) was pinched for time and that any delay at the toll booth would cause a late delivery and a reduction in pay for his employer. Both Richards and Salmons testified that Salmons was paid by Roadrunner in accordance with the terms of the agreement, at a set amount per mile reduced for late arrival at the assigned destination; and, that Salmons paid Richards. At the close of Beard's

case-in-chief, Salmons' demurrer to the evidence was overruled.

In Richards' case-in-chief, Beard's attorney solicited testimony on cross-examination that, prior to the injurious incident, Richards had been fired from prior employment for throwing wet insulation; Richards had been incarcerated for fighting in a tavern; Salmons had never seen Richards start a fight, but in hiring Richards, Salmons made inquiry about Richards only from his last employer; Salmons did not obtain Roadrunner's approval of Richards as a driver; and Richards had been in Salmons' employ for four months when the injurious incident occurred.

Salmons' testimony was offered in rebuttal to Beard's evidence. Salmons testified that the agreement was prepared by the Roadrunner attorneys to protect Roadrunner and that the agreement did not really "work that way." Other than his testimony, Salmons did not present any other rebuttal evidence. Roadrunner is not a party to this action and no representative of Roadrunner was called by any party as a witness.

At the close of the evidence, the trial court granted Salmons' request for a directed verdict. The jury returned a verdict in favor of Beard and against Richards in the amount of $6,232.17; a verdict in favor of Beard and against Richards on Richards' cross-claim; and, a verdict as directed by the court in favor of Salmons and against Beard. Judgment was entered in favor of Beard in the total amount of $8,527.67. Salmons' post-judgment motion for reimbursement of attorney fees and costs against Beard was granted in the total amount of $8,331.15. The correctness of the directed verdict was not appealed. This appeal is from the award of attorney fees and costs to Salmons as a prevailing party pursuant to 23 O.S.Supp.1986, § 103.

The Court of Appeals reversed the trial court award of attorney fees. Relying on *Norton v. Harmon*, 192 Okl. 36, 133 P.2d 206 (1943), the Court of Appeals held that when a party presents prima facie evidence to support a claim or defense, such claim or defense is well grounded in fact regardless of the ultimate disposition. We agree. We previously granted certiorari to review this first impression issue.

Title 23 O.S.Supp.1986, § 103 states:

In any action for damages for personal injury except injury resulting in death, or in any action for damages to personal rights the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by the nonprevailing party was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,-000.00) for reasonable costs, including attorney fees, incurred with respect to such claim.

 Section 103 is unambiguous. It authorizes prevailing party attorney fees and costs in certain circumstances. The express prerequisites to an award of prevailing party attorney fees are: 1) the claim is for damages for injury to person or personal rights; 2) the claim is adjudicated on the merits; 3) the prevailing party moves for reimbursement of attorney fees and other costs; and, 4) the court makes a determination that the claim or defense presented by the nonprevailing party was in bad faith, not well grounded in facts, unwarranted under existing law, or not a good faith argument for modification of existing law. Upon making the requisite finding, the trial court is mandated to enter a judgment directing the nonprevailing party to reimburse the prevailing party for reasonable costs, including attorney fees, incurred in defense of the unsuccessful claim. That is, Section 103 directs the trial court to penalize a party who abuses the courts by pursuing a frivolous claim or defense.

 The Oklahoma Constitution, art. 2, § 6, guarantees that our courts will be open to every person and justice shall be

administered without sale, denial, delay or prejudice. Liberal application of statutes authorizing prevailing party attorney fees has a chilling affect on our open access to the courts guarantee. See, *Moses v. Hoebel*, 646 P.2d 601 (Okla.1982), (litigation costs are subject to limitation in Okla. Const., art. 2, § 6). Accordingly, statutes authorizing prevailing party attorney fees are strictly applied by this Court. *Kay v. Venezuelan Sun Oil Company*, 806 P.2d 648 (Okla.1991). Exceptions to the American Rule are carved out with great caution. *Estate of Katschor*, 637 P.2d 855 (Okla. 1982).

■ An award of attorney fees pursuant to 23 O.S.Supp.1986, § 103 must be within the strict confines of the statute. If any part of the statute requires interpretation, it may be read in context with the other parts of the statute, *State ex rel. Rucker v. Tapp*, 380 P.2d 260 (Okla.1963), and in light of the law in effect at the time of enactment. *LeKan v. P & L Fire Protection Co.*, 609 P.2d 1289 (Okla.1980). When a motion for attorney fees is properly presented pursuant to § 103, the trial court has a statutory duty to determine whether the nonprevailing party asserted a frivolous claim or defense, that is, whether the claim or defense was asserted: 1) in bad faith, 2) not well grounded in fact, 3) unwarranted by existing law, or 4) not in good faith argument for the extension or modification of existing law. Implicit in this judicial duty, is the power to re-examine the record in its entirety to determine whether a claim or defense is within one of these four phrases, without being bound by the findings, conclusions and judgment on the merits.

■ Application of these four phrases may pose difficulty. However, the meaning of "in bad faith" is established by our American Rule jurisprudence. A "bad faith" claim is strictly limited to mean oppressive, abusive or wasteful claims; that is, the claim is made for oppressive reasons such as delay, *Melinder v. Southlands Development, Inc.*, 715 P.2d 1341 (Okla.1985), or in abuse of the judiciary and waste of public revenue, *City National Bank &*

*Trust Co. v. Owens*, 565 P.2d 4 (Okla.1977). The other phrases must be given similar strict application. A claim "not well grounded in fact" is a claim without any supporting facts, that is, there is an absence of any evidence together with reasonable inferences to be drawn therefrom, if unrebutted, which establishes the facts essential to support the legal theory on which the claim is based, *Rotramel v. Public Service Company*, 546 P.2d 1015 (Okla. 1975). A claim "unwarranted by existing law" is a claim without any supporting law, that is, without any existing law or recognized theory of law in support of the claim, *Hervey v. American Airlines*, 720 P.2d 712 (Okla.1986). An argument for extension or modification of existing law not asserted in good faith is a bad faith argument, oppressive, abusive or wasteful. A good faith argument most often necessarily must await final appellate review of the merits, such as in *Vanderpool v. State*, 672 P.2d 1153 (Okla.1983).

■ Salmons sought attorney fees and costs under § 103, asserting that Beard's claim of respondeat superior liability was not well grounded in fact and unwarranted by existing law. Our review of the record reveals that the trial court did not reconsider Beard's claim as required by § 103. Instead, the trial court awarded attorney fees and costs to Salmons because Salmons prevailed on the directed verdict. Section 103 does not authorize an award of attorney fees to any party who prevails on an issue determined as a matter of law. Rather, the trial court has the duty to review the entire record and reconsider the merit of the nonprevailing claim or defense within the confines of § 103. The trial court must make a finding that the claim or defense is frivolous based upon one of the four reasons set out in the statute.

■ We find from our review of the record that Beard's claim for damages against Salmons on the theory of respondeat superior liability was well grounded in facts. Beard's case-in-chief presented prima facie evidence, which, together with reasonable inferences to be drawn therefrom, if unrebutted, established the facts

essential to a respondeat superior liability claim against Salmons. A reasonable person could have concluded that at the time of the tortious injury Richards was an employee of Salmons engaged in the business of his employer and that the injurious incident was connected to the duty to timely deliver the load for his employer. *Mistletoe Express Service Inc., v. Culp,* 353 P.2d 9 (Okla.1959). Accord, *Niemeyer v. United States Fidelity and Guaranty Company,* 789 P.2d 1318 (Okla.1990); *Blood v. R.R. Engineering, Inc.,* 769 P.2d 144, 145 (Okla. 1989); and, *Rotramel v. Public Service Company,* supra. Beard's respondeat superior liability claim against Salmons correctly survived the pretrial motions and the demurrer to the evidence. It was well grounded in fact, even though Salmons succeeded on his motion for directed verdict.

■ We further find that Beard's claim for damages against Salmons was warranted by existing law. Salmons argued in the trial court and argues on appeal that Beard's claim is unwarranted under *Allison v. Gilmore,* 350 P.2d 287 (Okla.1960). The record reflects the trial court read *Allison v. Gilmore* to say that liability of a master for the intentional tort of a servant is not cognizable in Oklahoma law. The *Allison* decision stands for the proposition that in an action to recover damages for an intentional tort, an employer's demurrer to the evidence should be sustained where the evidence presents no connection between the employment of the truck driver and the incident causing the injury, as the injurious acts are not within the scope of employment. The *Allison* case is distinguishable on the procedure, as well as the facts. In *Allison,* the claim for assault and battery against the truck driver employee was dismissed without prejudice at the close of the truck driver's evidence. With the alleged tortfeasor voluntarily dismissed, the *Allison* trial court sustained the employer's demurrer to the evidence, which was appealed to this Court.

In *Ada–Konawa Bridge Co. v. Cargo,* 163 Okl. 122, 21 P.2d 1 (1932), the employer was held liable for damages where the toll collector intentionally shot the plaintiff for failure to pay the toll to cross the bridge. The Court reasoned that it was the duty of the toll collector to prevent use of the bridge without payment of the toll, thus, the shooting was committed in the course of employment. Beard's attorney presented the *Ada–Konawa Bridge* decision in argument to the trial court.

In opposing the demurrer to the evidence, Beard's attorney also argued *Tulsa General Drivers, Warehousemen, and Helpers Union v. Conley,* 288 P.2d 750 (Okla.1955). Relying on *Ada–Konawa Bridge,* the Syllabus by the Court states:

> Where plaintiff's evidence fails to establish the defendant's servant at the time and place of the assault and battery complained of, was acting within the scope of his employment, it is the duty of the trial court to sustain defendant's demurrer to plaintiff's evidence or defendant's request for an instructed verdict in its behalf.
>
> *Tulsa General Drivers,* 288 P.2d at 750.

Even if the trial court found that Beard's evidence failed to establish that the assault and battery was committed within the scope of Richards' employment, we do not find *Tulsa General Drivers* to be persuasive authority for the imposition of prevailing party attorney fees pursuant to § 103. Application of the reasoning in *Mistletoe Express Service, Inc. v. Culp,* supra, to the evidence in this case could support a finding of respondeat superior liability of Salmons for the intentional tort of his employee or agent. Beard's claim of respondeat superior liability against Salmons for the intentional tort of Richards is warranted under existing law, even though Beard did not succeed on his claim.

THE OPINION OF THE COURT OF APPEALS IS VACATED; THE JUDGMENT OF THE TRIAL COURT AWARDING ATTORNEY FEES AND COSTS IS REVERSED.

HODGES, V.C.J., and LAVENDER, DOOLIN and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

OPALA, C.J., and SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent. The majority's reversal of the award of attorney fees to defendant rests on mistaken notions of the underlying litigation and relies on inapplicable authority. By the time the majority opinion ends it has, through dicta, changed the standard by which an employer's liability for the actions of its employees has always been measured.

First, Beard did not present a prima facie case of Salmon's respondeat superior liability. By definition, a prima facie case is one which consists of sufficient evidence to get the plaintiff past a motion for directed verdict inasmuch as the evidence, if unrebutted, would be sufficient to support a finding in plaintiff's favor. *See, for instance, Black's Law Dictionary.* This was not the case here. Beard did not present sufficient evidence of Salmon's liability and that was why the trial court sustained the motion for directed verdict. That judgment was not appealed; its correctness has not been challenged and it is now the law of this case. The majority may not reshape and recast that evidence, and thereby change the effect of its legal sufficiency in a decision which is not before us for review.

Neither is the majority accurate in its statement that the trial court "did not reconsider Beard's claim as required by § 103" and awarded fees and costs to Salmons only because he "prevailed on the directed verdict." The transcript reveals that in assessing all the evidence and considering his previous rulings in the case, the trial court specifically found the claim was not well grounded in fact and sustained the motion on that ground:

"... if I was correct in sustaining the defendant's motion for a directed verdict, I was probably incorrect in not sustaining his motion for a motion for summary judgment.... I do think that it is a construction of the statute, 103, Title 23. As I read the statute, I, like Mr. Scarth, do not find bad faith, but I think the

second ground is, as Mr. Scarth's argument in that respect, is well founded that there was no basis in fact for the assertion of a claim against his client and the motion will be sustained. You may proceed with your proof."

Also, contrary to the majority's recitation of "facts," it was *not* shown that Richards was "in the process of hauling a load for Salmons" at the time of the altercation. To the contrary, Richards' status as Salmons' employee in general, as well as his agency at the time in question, was sharply disputed and contested by Salmons.

While Salmons owned the truck, the truck and driver were "leased out" to Roadrunner at the time of the attack. Evidence showed that Roadrunner was responsible for Richards who was working under Roadrunner's direction and control. On the day in question, Salmons had no way of even knowing Richards' whereabouts or destination and had no control over him.

Salmons could not have been liable for Richards' intentional torts under the doctrine of respondeat superior. Even if Richards had been shown to be his agent, there was no evidence that he acted within the scope of his employment in the commission of the intentional tort. The trial court's ruling in favor of Salmons was consistent with settled law in this jurisdiction: in order to hold a master liable for the intentional tort of his servant, the plaintiff must show first, that the relation of master and servant existed at the time and second, that the tortious act was committed within the scope of his authority. *Allison v. Gilmore, Gardner & Kirk, Inc.,* 350 P.2d 287 (Okla.1960); *Tulsa General Drivers, Warehousemen and Helpers Union, etc. v. Conley,* 288 P.2d 750 (Okla.1955); *Hill v. McQueen,* 204 Okl. 394, 230 P.2d 483 (1951).

Notwithstanding the majority's protests to the contrary, *Allison v. Gilmore, Gardner & Kirk, etc., supra,* is very similar to the matter before us and is controlling here. There we affirmed the trial court's ruling sustaining defendant/employer's demurrer to plaintiff's evidence as it failed to establish that defendant's truck driver em-

ployee was acting within the scope of his employment when he assaulted the plaintiff. We noted there the general rule is that it is not within the scope of a servant's employment to assault another and that a master will not be liable for such an assault, though committed by the servant while about his master's business. We found there was nothing connected with employment as a truck driver where his duties were to drive and deliver gasoline, that would warrant the employee fighting with a third party. Relying on our previous decision in *Tulsa General Drivers, Warehousemen and Helpers Union, etc. v. Conley, supra,* we also observed that:

> "This court has long been committed to the rule, that, 'In order to hold master or principal responsible for tort or negligence of his servant or agent plaintiff must establish that act committed by servant or agent was within the scope of his authority as such servant or agent, and in the course of his employment.'"

We have recognized that where a servant commits an intentional tort *within* the scope of his authority, the employer is responsible to the injured third party. *Ada-Konowa Bridge Co. v. Cargo,* 163 Okl. 122, 21 P.2d 1 (1932), cited by the majority is representative of that line of cases. The authority of the servants in those cases differs in character and degree from that involved in the instant one, however, and those cases are easily distinguished. We discussed this difference at length in *Hill v. McQueen, supra,* where we recognized that in the *Ada-Konowa* situation, paying the toll was a condition precedent to enjoying the right, and that it was the toll keeper's duty to get that toll or withhold the privilege. In light of the fact that successful employee performance involved immediate action in opposition to the other's will, it was determined that such tortious action should be anticipated by the employer.

Similarly, *Mistletoe Express Service, Inc. v. Culp,* 353 P.2d 9, 11 (Okla.1960), is clearly distinguishable from the case at hand and the majority's conclusion that its reasoning would support imposing liability on Salmons for Richards' intentional torts is unconvincing. In *Mistletoe,* the Court found that the employer, a common carrier, had deliberately sent an employee known to have a violent nature and commonly called "Slugger" into a situation where the employer was expecting bad feelings. Even though knowing the employee's disposition, the employer gave specific instructions which were almost certain to cause the very result produced: assault on a third party. While acknowledging the general rule of nonliability of an employer for the intentional torts of its employee, the Court held that liability would be imposed where the employer had knowledge of its employee's "dangerous, hot-tempered, antagonistic and pugilistic disposition" and it was "shown that such employee was acting within the scope of his employment and that such act complained of was done as a means of carrying out the job assigned to him." That decision is not relevant to the issue presented in this action and does not support the majority's reliance on it to justify the decision. By adopting that decision as the standard by which it would judge Salmons' responsibility, the majority alters the established law governing respondeat superior liability without good reason.

I would affirm the trial court's award of attorney fees to defendant pursuant to § 103 based on that court's finding that this action was not well grounded in fact.

I am authorized to state that Chief Justice OPALA and Justice HARGRAVE join with me in the views expressed above.